# Neff's Appeal.

Upon an appropriation of the proceeds of a sale by the sheriff of the real estate of A, a judgment against him as security of B must be paid, although it may appear that the same judgment is a lien upon the real estate of B, which is sufficient security for its payment; the remedy of the subsequent judgment creditors of A is by subrogation.

A creditor who releases any security which he holds for the payment of his debt, thereby releases a surety *pro tanto.*

A creditor having a judgment against his debtor and his surety, which was a lien upon the real estate of the principal, agreed to release a part of the said real estate in order to make a title to one who purchased it for its full value, upon condition that the purchase money should be applied to the extinguishment of a mortgage which was a prior lien upon the whole estate: *Held,* that the surety was not thereby released.

APPEAL from the decree of the Common Pleas of *Mifflin*

county, appropriating the proceeds of the sale of the real estate of Isaac Neff.

The court referred this subject to an auditor, who made the appropriation of the proceeds of the sale by the sheriff, amounting to $12,040, to the judgments in the order of the dates of the liens as they appeared upon the record, and thus stated and disposed of the objections made by those creditors whose judgments were not reached by the appropriation:

On the part of judgment creditors of Isaac Neff whose judgments have not been reached by the foregoing distribution, the appropriation to judgment No. 168, April Term 1839, P. Givin's executors now for the use of Rosanna Wilcox *v.* David Miller, Stephen Miller and Isaac Neff, has been resisted before the auditor on the ground that when a judgment creditor has a lien upon two funds, either good, and a subsequent creditor has a lien only on one of them, equity will compel the former to resort for satisfaction to the fund upon which the latter has no lien; it being admitted by the counsel in the above judgments that Isaac Neff is merely bail of the Millers; and the said creditors offering to prove by the admission of one of the executors of P. Givin, and by other evidence, that the lien of the said judgment, upon the property of the Millers, renders it perfectly safe. But the auditor is of opinion that he could not be governed by the principle stated unless both funds were actually before him for present distribution; and that the subsequent creditors, in any other case, must urge their equity by an application to the court for substitution, or to compel an assignment of the prior judgment. It has also been contended before the auditor, that Rosanna Wilcox, by a release (filed 9th August 1843, and produced before the auditor) of 30 acres of the land of David Miller from the lien of the judgment referred to, released Isaac Neff, the bail, from liability upon it. But it being shown that the released part of Miller's land was sold to Robert M'Burnly for $1050, and the whole proceeds of the sale applied to the payment of a prior mortgage upon that and all the tract of land of Miller, that the release and sale were both for that purpose, and did not affect or alter the situation of any of the parties in the judgment, the auditor is of opinion the result contended for does not legally follow the release. The auditor has therefore appropriated to the judgment in its place the full amount of its debt, interest and costs.

The court confirmed the report of the auditor, and decreed that the money be paid accordingly.

*Miles,* for appellants. The appropriation to the judgment in question was opposed, and is now opposed, on two grounds:

1. That this judgment was a lien on real estate of David Miller the *principal* in the judgment as well as on the real estate of Isaac Neff, who was a mere *surety.* That the property of Miller, the

principal, was an ample security for the payment of the judgment; and that under such circumstances the executors of Givin cannot be permitted to take satisfaction of their judgment out of the property of the surety, to the injury of a subsequent purchaser from the surety, and to the injury of the judgment creditors of the surety.

2. That Rosanna Wilcox, who owned the judgment, by a release dated 10th July 1843, discharged thirty acres of the land owned by Miller, from the lien of the judgment, without the consent of Isaac Neff.

To sustain the first position taken by the appellants, the following authorities are relied upon. If a creditor has a lien on two parcels of land, and another creditor has a lien of a younger date on one of these parcels only, and the prior creditor elects to take his whole demand out of the land on which the junior creditor has a lien, the latter will be entitled either to have the prior creditors thrown upon the other fund, or to have the prior lien assigned to him, and to receive all the aid it can afford. 1 *Rawle* 304; 1 *Johns. Ch.* 412. " Where a creditor has had two funds, we have prevented him from frustrating the lien of another who had but one." Chief Justice GIBSON in 1 *Rawle* 302; 12 *Serg. & Rawle* 40; 10 *Watts* 304. So Mr Justice KENNEDY, in 6 *Watts* 225, citing *Story's Eq.*, sec. 633, says, " If A has a mortgage upon two estates for the same debt, and B has a mortgage upon one only of the estates for another debt, equal in amount to the value of the latter estate, while the other estate is amply sufficient to satisfy A's debt, B has a right to throw A, in the first instance, for satisfaction upon the estate which B cannot touch. Thus A is only made to act in conformity to the principles of equity and natural justice; and to exercise his right according to the common civil maxim, *sic utere tuo, ut alienum non lædas.*" Mr Justice STORY, in 1 *Story's Eq.*, sec. 634, lays down this rule : " If a first creditor has a judgment against A and B, and a second against B only, and it does not appear whether A or B ought to pay the debt due to the first creditor, nor whether any equitable right exists in B to have the debt charged on A alone, in such a case, equity will not compel the creditor first to take the land of A in satisfaction." But it is submitted, if it be shown that A ought to pay the debt, is not the converse of the proposition true ?

Here it is shown that Miller ought to pay the debt, and the distinction between principal and surety is not destroyed by obtaining a judgment on the original security. 8 *Serg. & Rawle* 458; 1 *Watts & Serg.* 158. The executors of Givin (or Rosanna Wilcox, the owner of the judgment) were not compelled to claim the money arising from the sale of Neff's property at the risk of losing their lien upon Miller's. In 1 *Rawle* 303, Chief Justice GIBSON says: " It (the Bank) waived its preference in favour of a surety to pursue the principal, the very thing that a court of

equity would have compelled it to do." Again, page 304: "Echelman, therefore, could have compelled the bank to exhaust its means of obtaining satisfaction from the lands of Winger, or, on payment of the debt, to assign its lien." In the case cited, the junior creditor had taken an assignment of the prior lien for the purpose of enabling him to waive its priority. A chancellor, under the circumstances of the case before the court, would restrain Givin's executors from taking satisfaction out of the property of the surety to the injury of his creditors, when the property of the principal is an ample security for their debt.

2. If the obligee undertake to discharge the principal, or in any considerable degree to lessen his responsibility without consulting the surety, the latter will be discharged. 3 *Binn.* 520. An extension of credit to the principal by a contract sufficient to tie up the hands of the creditor, without consulting the surety, will discharge him. 3 *P. R.* 439. The acceptance of a judgment before a justice of the peace by the payee of a note against a principal payer upon whose freehold there are liens, with a stipulation that he shall be entitled to a stay of execution, is a release of a surety in that note. 2 *Watts* 45. A surety is entitled to every remedy which the creditor has against the principal, to enforce every security and all means of payment, and to stand in the place of the creditor. He has a right to have the securities transferred to him. If the obligee (says Mr Justice DUNCAN in 16 *Serg. & Rawle* 28) renders any such security which he took from the principal debtor, void, this discharges the surety; for the very taking of that security by him may have excited confidence in the security, and lulled him asleep, and deprived him of taking other security for his own eventual responsibility, until it was too late, and the rights of third persons had intervened; and therefore equity imposes an obligation on the creditor who takes the security, to take it fairly and lawfully, and to hold it impartially and justly; as for instance, the security, by his very character and relation as security, has an interest that a mortgage taken from the principal debtor shall be dealt with in good faith, and held in trust, not only for the creditor's security, but for the surety's indemnity. See also 4 *Johns. Ch.* 130. A surety who has paid the debt is entitled to be substituted for the creditor. 2 *Rawle* 131. A surety in a judgment who is compelled to pay it is entitled to have it paid out of the land of his principal, notwithstanding the intervening rights of the judgment creditors of the principal. 3 *P. R.* 62.

The principles and the reasons of the authorities here cited to establish the correctness of the second point made on behalf of the appellants, all tend to one conclusion, that the creditor cannot impair his securities or remedies against the principal, by *positive* acts of his own, without the consent of the surety, except at the hazard of discharging him. And it is no answer in this case to say, that the thirty acres of land which were released from the

lien of the judgment were sold by Miller and the proceeds applied to the satisfaction of a prior lien. The surety had a right to have the lien of the judgment enforced upon the whole of the land. But the creditor and the principal debtor have deprived him of that right without asking his consent. And the question is not, *is* he injured by the transaction? for that cannot be ascertained; but *may* he have been injured by it? If he could be, as he was not consulted, he is discharged.

*Orbison,* for appellees. This court, in doing equity, has never taken away money raised by a sale of land from the first creditor and given it to the subsequent creditors, unless in a case where there has been a loss of lien, &c. But in a case like this, the court has never gone further than to give to the junior creditor the securities which a prior creditor has, upon the whole money being paid to him. 3 *Watts* 477; 6 *Watts* 277. The defendants in the Givin judgment are considered as principals so far as third persons are concerned. 3 *P. R.* 200; 16 *Serg. & Rawle* 202; 3 *Serg. & Rawle* 20. Although part of Miller's land was released from the lien of the judgment, yet the proceeds or value of that part was applied to a prior mortgage, and was rather a benefit to Isaac Neff than an injury. But so far as Isaac Neff's creditors are concerned, they would have no equitable claim to this money, unless they had given the owner of the Givin judgment notice not to release any part of Miller's property. However, they admit that if they were substituted plaintiffs in the Givin judgment, Miller's property would be ample security. If any risk is to be run, the subsequent creditors are not to take away the money now in court from the Givin judgment and place the hazard of depreciation in value of land, loss of lien, &c., upon the owner of the prior judgment. 5 *Rawle* 51; 3 *Watts* 477; 3 *P. R.* 57; 5 *Watts* 172.

We think that in a case like this the court would not take away the money from the prior judgment creditor, but direct it to be applied to the first judgment; and upon an application for substitution, would do full and entire equity in the case, having regard to the claims of Miller's creditors as well as those of Neff; and also to the rights of Isaac Neff as security. As the owner of the Givin judgment has done nothing which would postpone it, in favour of subsequent creditors, upon inquiring into the best way of doing equity (and an application for substitution), would not Isaac Neff be the person entitled to preference so far as his creditors are concerned, inasmuch as their judgments are not against Miller? See 3 *P. R.* 57; 5 *Watts* 229. And would not the creditors of Miller, subsequent to Givin, be preferred to, and have a more equitable claim than even Isaac Neff, to be paid out of Miller's property in case of a sale of it, and the money brought into court? A surety is not discharged by a release of a security except to the extent he is injured. 1 *Law Lib.* 84–5–7.

[Neff's Appeal.]

The opinion of the Court was delivered by

KENNEDY, J. — A number of judgments, of various dates, in favour of different persons, had been obtained against Isaac Neff and Neff and Walker, which bound their respective real estates, which were afterwards sold by the sheriff by virtue of judicial process sued out on some one or more of said judgments. The money arising from the sale was brought into court by the sheriff, and not being sufficient to satisfy all the judgments, a contest arose about the appropriation of it. Among the judgments which bound the property sold, was one in favour of Patrick Givin's executors, assigned to Rosanna Wilcox, upon which a balance of debt and interest, amounting to $2203.92, remained due and unpaid, besides $4.35 costs. This judgment was joint against David Miller, S. Miller and Isaac Neff, Isaac Neff being admitted to be a mere surety for the Millers. The judgments posterior in date to it were, in amount, more than sufficient to absorb all the residue of the money after paying the judgments prior thereto, without applying any portion thereof to it. It was offered also to be proved in the court below, before the auditor appointed by it to ascertain the facts, and to make and report the appropriation that ought in his opinion to be made of the money, that the Millers, the principals in the judgment, were perfectly solvent, and that their real estate, bound by the judgment, was of amply sufficient value to satisfy the amount thereof. The auditor, however, considering this evidence immaterial, did not receive it, and in this he was sustained by the court, as it approved and confirmed his report. But it was shown that Rosanna Wilcox had released thirty acres, part of a tract of land bound by her judgment belonging to David Miller, one of the principals in it, from the lien thereof, in consideration of the thirty acres having been sold for $1050, a sum equal to the full value of the same, which was agreed to be applied to the payment and discharge of a mortgage of the same amount, which was a prior incumbrance on the whole tract to the lien of her judgment, and that the $1050 were so applied, and the mortgage thereby discharged and satisfied. Isaac Neff, as it seems, had sold other land bound by the judgments against him to a John Henry, to whom John Neff and Daniel Neff became bound as the sureties of the said Isaac Neff, to keep and save harmless the said Henry from the said judgments. And again, John Neff and Jacob Neff were bound as co-defendants and as sureties for Isaac Neff in a judgment of subsequent date to Mrs Wilcox's, in favour of James Smith. John Neff, Daniel Neff and Jacob Neff, in order that they might be protected from being made liable to the payment of money as sureties for Isaac Neff, claimed, first, that Rosanna Wilcox should be compelled to go against the property of the Millers, the principal debtors, for the amount of her judgment, and not be permitted to take the same out of the money made by the sale of the estate of Isaac Neff, who

was a mere surety and derived no benefit whatever from the debt; and that this ought more especially to be done, because otherwise it would not only leave them liable to pay moneys for Isaac Neff, for which they had never received any benefit, but most likely leave some of Isaac Neff's creditors without the means or the power of getting anything towards satisfying their claims. But if this be done, every one may receive what is justly due or coming to him or her; but if not, it is pretty certain that one or more will lose and must suffer. Equity and justice would therefore seem to require that Mrs Wilcox should be compelled to look to the property of the Millers, the real debtors, for payment. But it has also been argued, if she cannot be compelled to do this, that she has, by the release of the thirty acres from the lien of her judgment, released Isaac Neff and his property from all liability to pay her judgment. The court below, however, as well as the auditor, decided against the Messrs Neffs on both points; from which decision they have appealed to this court.

The argument of the appellants, in support of their first point, would be irresistible, perhaps, if the real estate of the Millers had been converted into money and brought into court for appropriation as Isaac Neff's was. But this was not the case, and could not be effected without some considerable delay, a delay most probably of six months at least, which might be very injurious to Mrs Wilcox, who had an undoubted right to receive the amount of her judgment immediately out of the moneys in court arising from the sale of Isaac Neff's estate. Her right, in this respect, was not only legal and perfect, but likewise consistent with every principle of equity. It would therefore have been wrong to have compelled her to give up her right to receive the amount of her judgment out of the money in court, or to have postponed the payment of it a single day after it was judicially ascertained that she was clearly entitled to have it paid out of the money in court. If the Messrs Neffs had any claim or right to have the appropriation made of the money in court, which they requested, it was purely equitable, and such as they could not ask to have carried into effect at the expense, or more properly, as it may be said, the sacrifice of either the legal or equitable rights due to others. To entitle themselves to relief or any benefit on the ground of equity, it was incumbent upon them to do equity, by placing Mrs Wilcox immediately in the possession of the money due and coming to her on her judgment, that is, by paying it, instead of asking that she should be delayed, for some uncertain period of time, in the receipt of it. Had they paid or tendered her the amount of her judgment, and in case of her refusal to accept have brought it into court, they might then have been said to stand on ground that would most probably have entitled them to an order or decree of the court giving them the benefit and control of Mrs Wilcox's judg-

ment.   But having done nothing of this sort, we think the court were right in deciding against them on their first point.

We also think that the second point of the appellants cannot be sustained.  It is doubtless true, if the creditor, by a new agreement with the principal, without the assent of the surety, makes any material alteration in the agreement whereby the surety became bound as such, the surety will thereby be discharged, because the only contract that bound him is no longer in being; for the change and alteration of it by the operation of the new contract, made without his consent, in effect annuls and sets aside the contract by which he bound himself, and the only one to which he was a party.   So if the creditor releases the principal from the payment of the debt, he thereby releases the surety entirely.   But if he release the principal from a part only of it, he only releases the surety *pro tanto ;* and there is not even the shadow of reason why it should be considered a release for any more.  So if the creditor give up to the principal or release a security which he has obtained from him for the whole of the debt, it will operate as a release or discharge of the surety from all liability as such; but if the security released be only for part of the debt, the surety will only be released *pro tanto.*   The ground upon which the relinquishment or negligent losing of a security taken of the principal debtor by the creditor for the whole or part only of the debt, is held to be a release of the surety either for the whole or *pro tanto,* as the case may be, is, that the surety upon payment of the debt to the creditor, is entitled to the benefit of all securities which the creditor has, that he could have rendered available against the principal debtor ; and if any of those securities have become lost, or have become lessened in value, in consequence of the neglect or default of the creditor, the surety's liability to the creditor will be diminished to that extent.  *Vide Pitman on Principal and Surety* 113–14; 40 *Law Lib.* 86 ; *Theobald on Principal and Surety* 84, 85, &c. ; *Commonwealth* v. *Miller,* (8 *Serg. & Rawle* 452, 457–8) ; 2 *Swanst.* 189.   When the real value of the security, lost by neglect of, or given up by the creditor, is capable of being ascertained with certainty, and it is less than the amount of the debt, it would not only be contrary to reason to extinguish the liability of the surety entirely, as a diminution equal in extent to the value of the security given up or lost is amply sufficient to protect him from any loss that could accrue from his not obtaining such security, which is the utmost that he can with reason claim ; but it would likewise be repugnant to the ground or principle upon which the surety has a right to claim a discharge from his liability as such.   But when it is impracticable to ascertain, with any degree of certainty, whether the security lost or relinquished might not have availed the surety to the full extent of the debt, in case he had paid it, it would seem to be right that he should be discharged entirely from all liability, and that the bur-

then of proving the value of the security should lie on the creditor. In the present case, however, although it appears that Mrs Wilcox released thirty acres of the land of the principal debtor from the lien of her judgment, yet it was done for the purpose of increasing the value of the security, and, in this respect, rendering it more certain, which she had for the payment of her debt, instead of lessening it; and in the opinion of the auditor, and according to the evidence given before him, this would seem to have been the effect of what she did; that by making a small portion of the tract pay the mortgage debt, which was an incumbrance upon the whole tract, prior in date to the lien of her judgment, and might at a forced sale have swept away the whole tract to pay it. It was in fact a charge upon the whole tract of land, and from all that appears in the case, the land was the only resource from which payment of it could be obtained, so that Mrs Wilcox had no alternative which seemed so well suited to preserve at least a portion of the land as a security for the payment of her judgment, as that of releasing the thirty acres from the lien of it. It may, therefore, be very properly considered an improvement of her security, instead of a diminution of it.

Decree affirmed.