## *In re* CAROTHERS, Bankrupt.

*(District Court, W. D. Pennsylvania.    July 15, 1882.)*

**BANKRUPTCY—SALE OF MORTGAGED PREMISES—PARAMOUNT LIEN.**

> Although a mortgage may be within the equity of the rule that where several pieces of real estate, subject to a common encumbrance, are successively aliened, the properties so disposed of are liable for the amount of the encumbrance in the inverse order of alienation; yet, where the mortgaged property is sold in bankruptcy discharged of encumbrances, the said rule cannot be invoked where the effect would be to deprive the paramount lien creditor of the proceeds of sale. The latter is entitled to the fund, and such mortgagee must seek subrogation and indemnity in another proceeding.

In Bankruptcy.

*Sur* exceptions by William A. Shaw to register's distribution of proceeds of sale of real estate.

*W. S. Purviance,* for exceptions.

*John Dalzell,* for report.

ACHESON, D. J.    Mrs. Margaret J. Chalfant sold the bankrupt a tract of land, taking from him a mortgage thereon to secure his purchase-money bond.    After the recording of this mortgage the bankrupt laid out the land into lots.    He subsequently executed a mortgage upon three of them—numbered 1, 2, and 3—to William A. Shaw, to secure a loan of money.    The bankrupt sold lots to divers persons after recording of the Shaw mortgage.    Mrs. Chalfant brought suit on her bond, and on June 22, 1874, obtained judgment.    All these transactions were before the bankruptcy proceedings were commenced. At that time the bankrupt owned lots 1, 2, and 3, and the assignee, under an order of this court made upon his petition, sold said lots discharged of liens.    The register appropriated the proceeds of sale to Mrs. Chalfant's mortgage debt.    Of this appropriation Shaw complains, he insisting that for his relief Mrs. Chalfant should first resort to the lots bound by her mortgage, which the bankrupt sold after the recording of his (Shaw's) mortgage.

The principle invoked by Shaw is that where several pieces of real estate are subject to a common encumbrance and are aliened successively, the properties so disposed of are liable for the amount of the encumbrance in inverse order of alienation.    *Martin's Appeal,* 97 Pa. St. 85.    Doubtless, in a proper case, a mortgagee may claim the benefit of this equitable doctrine, and Shaw may find it available to him as against the bankrupt's later vendees in an appropriate proceeding for subrogation and indemnity.    *Neff's Appeal,* 9 Watts & S.

36; *Arna's Appeal*, 65 Pa. St. 72. But clearly he has no equity as against Mrs. Chalfant. Id. Her mortgage was the first lien, and was discharged from the lots sold in bankruptcy. Unquestionably her lien was transferred to the proceeds of sale, and her right to receive the same cannot be gainsaid by a junior mortgagee upon the ground here relied on.

The court is not dealing with two funds, both subject to the lien of one creditor, while the other creditor has a lien against one fund only. There is but one fund for distribution, and to it Mrs. Chalfant has a perfect legal right. Moreover, the vendees of the bankrupt are not before the court, and the equities between Shaw and them cannot be settled in this proceeding.

Upon general principles, therefore, the register was right in appropriating the fund to Mrs. Chalfant; but his distribution was eminently proper, in view of the provisions of the act of assembly of April 22, 1856, (par. 827.) Under that act Shaw was bound to tender Mrs. Chalfant the amount due her before he could compel her to first levy upon the lots alienated after the recording of his mortgage. *Arna's Appeal, supra; Phelps's Appeal,* 10 W. N. C. 525.

This cause came on for final hearing June 12, 1882, and was argued by counsel; and now, July 15, 1882, upon consideration, the exceptions to the register's report are overruled and his distribution is confirmed absolutely.