# Templeton et al. *versus* Shakley.

1. Execution, in pursuance of a judgment entered on warrant of attorney, may issue without scire facias; it issues, however, at the peril of the plaintiff, and the court may, at the instance of the parties, direct an issue on a scire facias either before or after execution issued.

2. A bond, which contained a power of attorney to confess judgment, was conditioned for the payment of $10,000; said sum to be released on delivery of 3,500 barrels of oil "when called for at any time within six months." About a year after the bond was due judgment was entered thereon, and subsequently a scire facias, treated as for the liquidation of damages for a breach of the bond, was issued. On the trial the defendants offered to prove that a demand was made for the oil pursuant to the contract; it was objected that evidence of such demand was irrelevant and incompetent, if the same were made prior to the entry of judgment on the bond.

*Held*, that the evidence was admissible whether the demand was made before or after the entry of the judgment. The judgment was for the penalty merely, and the entry thereof adjudicated nothing as to the extent of the real debt. For the ascertainment of the latter, the value of the oil on the date of the demand was important.

3. An exemplification of the record of the judgment was entered in another county and attachment executions issued thereon, under which were attached certain money and oil belonging to B., surety on the bond; and, subsequently, an alias attachment was levied on money of A., the principal. Afterwards A. and B. met the plaintiffs (obligees in the bond) at a lawyer's office, where certain papers were signed by all the parties, to the effect that if B. would transfer to the plaintiffs his attached property, the same would be accepted as payment of 1,000 barrels of oil, and the other attached property (*i. e.*, A.'s) would be released, and A. and B. should pay the remaining 2,000 barrels of oil in specified instalments. B., who was an illiterate man, afterwards claimed that these agreements were fraudulent and obtained from him by the collusion of the other parties, who represented that by transferring his attached property (which he did), he would be entirely released from further obligation under the judgment; and he also claimed that he knew nothing of the attachment of A.'s property or the release thereof by virtue of the agreements.

*Held*, that the evidence which B. offered of this fraud was sufficient to submit to the jury.

[Templeton et al. v. Shakley.]

4. The jury, having found this fraud, *Held*, that said agreements were eliminated from the case as far as B.'s obligation under them was concerned, but that they were binding upon the plaintiffs and upon A.

5. Under said agreements B.'s money and effects were turned over to the plaintiffs, while A.'s money was released and subsequently received by him, the amount thus diverted from the proper channel being sufficient to pay the balance due on the bond.

*Held*, that the plaintiffs having once had the means of compelling payment from A., the principal, and having released him, B., the surety, was thereby discharged from the debt; and this although the plaintiffs may not have known of the relation of principal and surety between A. and B. at the time.

*Held*, further, that the amount of the debt released was a material fact for the jury; and that in order to determine the sum due A. from C. (the garnishee), it was not error to submit to the jury an original contract in reference thereto between A. and C., the testimony of the parties to that contract, and the record of the proceedings on the attachment, including the answer of C. as garnishee.

6. By mistake of the court officer, the answer of C., as garnishee, was filed as of the term and number of the attachment proceedings against B.'s garnishees, instead of the term and number of the alias writ against C.

*Held*, that this did not affect the admissibility of the answer.

October 16th, 1884. Before MERCUR, C. J., TRUNKEY, STERRETT, GREEN and CLARK, JJ. GORDON and PAXSON, JJ., absent.

ERROR to the Court of Common Pleas of *Armstrong county*: Of October Term, 1884, No. 116.

Scire facias brought by P. A. Templeton and J. Y. Foster against A. T. Spence, Daniel M. Shakley and H. P. Shakley. The scire facias was in form to revive a judgment and continue the lien, but it was treated throughout the trial as a sci. fa. to liquidate damages arising from a breach in the conditions of a bond.

On the trial, before NEALE, P. J., the following facts appeared: About July 1, 1874, in consideration of the loan of 3,000 barrels of oil, the defendants gave the plaintiffs a bond (in form a joint and several obligation), in the penal sum of $20,000, conditioned for the payment of $10,000 within six months from date, and containing the following clause: "The above sum to be released on the payment or delivery by said A. T. Spence, Daniel M. Shakley and Henry P. Shakley to said J. Y. Foster and P. A. Templeton, or their assigns, of three thousand five hundred barrels of good crude purchasable petroleum, to be delivered *when called for* by said Foster and Templeton, any time within six months from date hereof."

This bond was renewed several times, the last renewal being on July 8th, 1875. It contained a warrant of attorney to confess judgment, waived inquisition and exemption, and pro-

vided for the allowance of five per cent. attorney's commissions. Foster afterwards assigned his interest in the bond to Templeton.

On May 8th, 1876, judgment was entered on the bond in the Common Pleas of Armstrong county; and in February following an exemplification of this record was entered in the Common Pleas of Butler county. On July 12th, 1876, defendants paid 500 barrels of oil.

Attachments execution were issued on the exemplification of the record in Butler county to No. 240 March Term, 1877, and money of D. M. Shakley on deposit in the Argyle Savings Bank, supposed to be $2,329, and 191 barrels of oil in the hands of the United Pipe Line, were attached. Subsequently an alias attachment issued to No. 138, June Term, 1877, under which was levied and seized certain money of A. T. Spence in the hands of J. B. Hill, being purchase money for an oil well, amounting to from $2,700 to $3,100.

On April 2d, 1877, after the service of said attachments, D. M. Shakley, A. T. Spence and Templeton and Foster met in East Brady, Pa., where an agreement was entered into, which was reduced to writing the same evening in the office of John Gilpin, an attorney in Kittanning, the parties having gone there for the purpose.

Two papers were drawn by Mr. Gilpin and signed by the parties mentioned. One set out that Spence and Shakley should give to Templeton and Foster orders upon the bank for the $2,329, and upon the United Pipe Line for the 191 barrels of oil, and that when said orders were honored Templeton and Foster should release from levy and attachment all other property and money belonging to Spence and Shakley, which had been seized (including Spence's money in Hill's hands), and that by reason of the payment of said orders Spence and Shakley should be credited on the judgment as if they had paid 1,000 barrels of oil. The other writing recited the payment of said orders and set out that the residue of the judgment should stand as security for the payment of the 2,000 barrels of oil still due.

Shakley gave his check on the Argyle Bank for the $2,329 and an order on the Pipe Line for 191 barrels of oil. Upon presentation of these, about $635 less was realized than was expected, and Templeton and Foster refused to release the money in Hill's hands from attachment until this sum was arranged for between the parties, which was afterwards done.

On June 29th, 1877, a letter was written addressed to Templeton and Foster, and signed by A. T. Spence and D. M. Shakley, stating that the first instalment on the 2,000 barrels of oil would be due in a few days, and that as the latter were

[Templeton et al. v. Shakley.]

unable to pay it they desired an extension of time, and would continue bound by the previous agreements and judgment.

This scire facias was issued March 9th, 1881. Henry P. Shakley having been declared an habitual drunkard previous to July 8th, 1875, the judgment and sci. fa. were stricken off as to him; and on March 12th, 1884, judgment by default was taken against A. T. Spence.

The remaining defendant, D. M. Shakley, contended that, he was merely surety on the bond given in July, 1874, A. T. Spence being the principal, and the only one receiving any benefit therefrom; that on December 23d, 1875, a demand was made by Templeton on Spence for the oil mentioned in the bond, which Spence did not comply with, thus converting the oil into money at the market value thereof at said date; that the agreements drawn in Gilpin's office and the letter following them were frauds upon him (Shakley); that he could only read writing with great difficulty, and therefore did not read the agreements, nor were they read in his presence; Foster explained them to him and told him that if he would sign the papers and turn over his oil and money attached, that his property would be entirely released from further liability on the judgment under the bond; that he knew nothing of the promise contained in said agreements to pay 2,000 barrels more oil, nor did he know anything of the attachment of Spence's money in Hill's hands, and the promised release thereof under the agreements. The letter also, he claimed, was procured from him in the same way, Foster having written it and directed Spence to copy it and get Shakley's signature, which he did by misrepresenting its contents. Shakley further contended that in pursuance of the agreements of April 2d, 1877, and by collusion of the parties, the money, or part of it, belonging to Spence, the principal, and attached in Hill's hands, was released from the attachment without his (Shakley's) knowledge or consent, thus discharging him as surety to the extent of the sum released.

Defendant's counsel proposed to show by a certain witness that a demand was made on A. T. Spence, by the plaintiffs, for the oil mentioned in the bond. Objected, that if the demand was prior to May 8th, 1876 (the date judgment was entered on the bond), the evidence was incompetent and irrelevant. Objection overruled and testimony to the effect that such demand was made December 23d, 1875—admitted. (First and second assignments of error.)

Defendants' counsel proposed to show that Shakley had no knowledge of the above demand at the time, nor of the attachment of the fund in Hill's hands, until after he signed the agreements in Mr. Gilpin's office. Objected to. Objection

overruled and evidence admitted. (Seventh assignment of error.)

Defendants called A. T. Spence to show that in pursuance of a direction given him by Foster, he copied the letter of June 29th, 1877, and procured Shakley's signature thereto, without reading the letter to him, and by making explanations inconsistent with the contents thereof. Objected to as irrelevant and incompetent. Objection overruled and evidence admitted. (Eighth assignment of error.)

Defendants' counsel asked Shakley, "Did you read that letter at the time you signed?" Objected to on same grounds. Objection overruled. Answer. "No, sir." (Ninth assignment of error.)

In order to show the amount of money Hill had in his hands due A. T. Spence, and also to show that there was an arrangement between these parties by which this sum, or a large part of it, was turned over to Spence, in derogation of the rights of Shakley as surety, the defendants made the following offers of evidence:

(1.) Answer of J. B. Hill to the attachment execution at No. 138 of June Term, 1877, which by mistake was placed among the records on file at No. 240 of March Term, '77, another execution attachment from the original judgment of Foster and Templeton, against Spence and Shakley and their garnishees, viz.

Answer. "At the time of the service of the writ in this case there was money in my hands of the defendant, A. T. Spence, amounting to about fifteen hundred dollars, but about the time the above writ was issued I made an arrangement with J. Y. Foster, one of the plaintiffs, by the terms of which I was to answer in this case to plaintiff for the sum of one hundred and thirty-five dollars and no more, which sum I have retained and now have. No money has since come into my hands nor has accrued to said defendants." Objected to —objection overruled and answer admitted. (Third assignment of error).

(2.) A copy of a contract and assignment signed by one T. T. Spence and by Hill, dated March 27th, 1877, setting out the assignment of $3,100 to A. T. Spence. Objected to. —Objection overruled and paper admitted. (Fourth assignment of error).

(3.) Evidence to show that the fund in Hill's hands was absorbed in a private settlement between him and Spence. Objected to.—Objection overruled and evidence admitted. (Sixth assignment of error).

Plaintiffs asked the court to charge—

(5.) "That if the jury find from the evidence that there was

a valid agreement in writing signed by the defendant, Daniel M. Shakley and A. T. Spence, who were sued as co-defendants in this action, and Foster and Templeton, the plaintiffs, and executed on the 2d day of April, 1877, fixing the amount of oil due at that date, then such written agreement is the better evidence and should control the jury in finding the amount of the defendants' liability to the plaintiffs at that time, and also at what time and in what quantities the amount so found was to be delivered to the plaintiffs."

Answer. " Affirmed, unless the jury are satisfied from the evidence that the signatures and execution of the papers were procured by fraud, misrepresentation or other illegal act." (Twelfth assignment of error).

(7.) "That the paper dated June 29th, 1877, and signed by A. T. Spence and Daniel M. Shakley, is the paper of the defendant and estops him from denying his liability to the plaintiffs for the whole amount of oil secured by the original judgment and fixed by and stipulated in the agreement of April 2d, 1877, except so much as has been actually paid since the date of the last mentioned agreement." Refused.— (Thirteenth assignment of error).

(8.) " That the proof given by the defendant in support of an alleged release of moneys attached in the hands of James B. Hill is too indefinite and unsatisfactory in law to enable them to infer a release by the plaintiff of the sum attached in the hands of Hill, and especially if contradicted by the plaintiffs; and if the jury believe the evidence on the part of plaintiffs as to the alleged settlement and arrangement made on the 2d April, 1877, then they are to disregard all the proceedings under said attachment." Refused.—(Fourteenth assignment of error).

The defendant submitted, *inter alia*, the following points:

(1). " The court must construe the bond on which judgment is entered and say to the jury that it is a bond with a penalty or in a penal sum of ten thousand dollars, conditioned for the delivery of three thousand five hundred barrels of oil on demand. That the amount named in the bond is a penalty and not liquidated damages." Affirmed.—(Fifteenth assignment of error).

(2.) " That if the jury believe a demand was made of the oil from Spence by Templeton on the 23d of December, 1875, that converted the oil into money at the market price of oil at the time of the demand which the evidence shows to be one dollar and forty cents per barrel." Affirmed.—(Sixteenth assignment of error).

(3.) " That it is the duty of the jury to apply all the payments to the price or value of the oil converted on the 23d

of December, 1875." . " Affirmed if the jury find there was a conversion." (Seventeenth assignment of error).

(4.) " That if the jury find that A. T. Spence is principal and Daniel M. Shakley his surety, that the plaintiffs attached a debt owing to the principal in the hands of J. B. Hill, and without the consent or knowledge of the surety, released the same or any portion of it, or consented that all or any part of it should be paid to the principal debtor, by J. B. Hill, and that it or any portion of it was paid by Hill to Spence; to that extent the surety is discharged from his liability on the bond and judgment." Affirmed.—(Eighteenth assignment of error).

(7.) " If the jury find from the evidence that the contracts of the 2d April, 1877, and letter of 29th June, 1877, were obtained from D. M. Shakley by the plaintiffs concealing the facts that a previous demand had been made for the oil and its consequent conversion into money, and if the fact that an attachment had been issued against J. B. Hill, and that such facts were known to the plaintiffs, or one of them, and unknown to the defendant and of his rights, in that event the contracts as to defendant Shakley are fraudulent and void, and he would not be bound thereby." Affirmed.—(Twenty-first assignment of error.)

In the general charge the court instructed the jury, *inter alia,* as follows:

" If on the other hand under all the evidence you find that Templeton did on the 23d of December, 1875, make an actual demand of the oil, then you will go further and ascertain what was the market value of oil on that day. You have sound evidence that the price was $1.40 per barrel, which would be $4,900, on the 23d of December, '75, hence, if you are satisfied that a demand was made—actually made—and there was nothing further in the case, the verdict as of that date would be $4,900 . . . . . If you should reach the conclusion that neither of these theories is correct and that a demand has never yet been made, we would in pursuance of one of the points of the defendant instruct you that there could be no recovery upon that ground in this case, but that is entirely for you." (Tenth and eleventh assignments of error.)

Verdict for the defendant and judgment thereon; whereupon the plaintiffs took this writ assigning for error the rejection and admission of evidence and the answers to points, as above set out.

*Leason,* (with whom was *McCain*), for plaintiffs in error.

*Charles McCandless*, (with whom was *E. S. Golden*,) for defendant in error.

Mr. Justice CLARK delivered the opinion of the court November 13th, 1884.

The questions presented upon this record arise upon a scire facias, which, in form, is to revive judgment, continue lien, &c. ; it has been treated, however, throughout the trial by both counsel and court as a scire facias to liquidate the damages arising from a breach of the condition in the bond, and to ascertain the balance, if any, due thereon ; the cause having been so tried we will consider it as if breaches had been formally assigned.   A judgment on warrant of attorney without writ is not within the Statute of 8 and 9 William III, cap. 11, or of our own Statute of 14th June, 1836 ; execution in such cases may issue without scire facias ; it issues, however, at the peril of the plaintiff, and the court may at the instance of the parties direct an issue on a scire facias, either before or after execution, as the case is presented : Skidmore *v.* Bradford, 4 Barr 296 ; Reynolds *v.* Lowry, 6 Id. 465 ; Jones *v.* Dilworth, 13 P. F. S. 449 ; Cochlin *v.* Commonwealth, 11 W. N. C. 460.

The bond upon which the judgment was entered is dated 8th July, 1875 ; it is not absolute in form, it is conditional in its obligations.   The amount of the bond, according to the import of the condition, is to be released on the delivery of three thousand five hundred barrels of crude petroleum, in the pipe line, when called for, any time within six months.   Judgment was entered on the bond on the 8th day of May, 1876. A bond payable in property only becomes payable in money by a failure to deliver as stipulated.   To pay in property is a privilege that may be waived, and when it is not claimed at the proper time it is waived : Chambers *v.* Harger, 6 Harris 15 ; Roberts *v.* Beatty, 2 P. & W. 63.   The oil was to be delivered in the pipe line " when called for," at any time within six months ; it was the duty of the defendants upon demand to deliver the oil as they agreed ; by their default, their privilege to pay in property would be defeated, and the debt thereby made payable in money.   But the duty to deliver is conditioned upon a demand, and therefore no debt was due, and there could be no default, consequently no liquidation of damages, until demand was made.   The judgment might be revived, but it could not be liquidated until after a demand of the oil, followed by a neglect or refusal to deliver.

We think that in view of the nature of the obligation the court was clearly right in permitting the defendants to prove any demand made for the oil, pursuant to the provisions of

the contract, whether the call was made before or after the 8th March, 1876 ; the entry of the judgment adjudicated nothing as to the extent of the real debt, the judgment was for the penalty merely, and the real debt was only ascertainable from matters extraneous to it. If the bond had been drawn for a determinate amount, for a fixed debt, the entry of judgment upon it would have been an adjudication to that extent, but here the judgment adjudicated simply the right of the plain-tiff to an indemnity to the amount of the penalty; the plaintiff took nothing by it excepting the additional security it afforded. The plaintiffs had the right to demand the oil at any time prior to the 8th January, 1876. They allege that they did demand it on the 23d December, 1875, and the jury has so found ; the real debt is therefore, in the first instance, to be determined by the price of oil at that date. With the weight of the evidence on this point we have nothing to do, that was for the jury; we cannot say as matter of law that there was no evidence from which, apart from the counter-vailing proof, the fact of a demand was not fairly inferred.

Daniel M. Shakley, the defendant, testifies that he was the surety for Spence in the obligation, and that he had no bene-ficial interest in the matters involved; the jury has so found, and the fact is assumed in the argument on both sides. An exemplification of the record of the judgment having been entered in Butler county, an attachment execution was there issued on the 12th February, 1877, under which were seized and levied the moneys of Daniel M. Shakley, on deposit in the Argyle Savings Bank, supposed to be $2,329, and 191 bar-rels of oil in the hands of the United Pipe Line. On the 29th March, 1877, an alias attachment issued, under which were seized and levied the moneys and effects of A. T. Spence, the principal debtor, in the hands of J. B. Hill. These several attachments formed the basis for the contract consummated in the office of Mr. Gilpin, at Kittanning, on the 2d April, 1877.

The defendant, who is an illiterate man, contended at the trial that his signature to this contract had been obtained by the artifice of the plaintiffs, who acted in collusion with Spence to defraud and deceive him. He testified that he did not read the papers himself, nor were they read to him ; that the contents were fraudulently concealed from him ; that Fos-ter, who was a party in interest and represented Templeton, falsely explained their purport, and said that if Shakley would sign the agreement, give a check for the money on deposit in the Argyle Savings Bank for $2,329, and an order for 191 barrels of oil in the pipe line, that would release him on the

[Templeton et al. *v.* Shakley.]

judgment, and that he signed the paper on the faith of this statement, and would not have signed if the contents had been correctly stated; that he had no knowledge whatever that any call had at any time been made for the oil, or that any attachment had been levied upon the debt owing by Hill to Spence, or that the agreement referred to operated as a release of that attachment. He further testified that the letter of 29th June, 1877, in seeming ratification of the agreement, was also obtained by fraud. In these several statements he was corroborated in the main by the testimony of A. T. Spence, who, among other things, states that the letter of 29th June, 1877, addressed to Templeton & Foster, was written by Foster, copied by Spence, and that Shakley's signature thereto was obtained without informing him correctly as to its contents. The allegation that there was an effort on all hands to conceal from Shakley all knowledge of the Hill attachment is somewhat strengthened by the alleged conduct of the parties in Mr. Gilpin's office, and the form of the papers there prepared; these papers were written, Shakely says, under the direction of Foster and Spence, without consultation with him, and it is certainly true that the stipulations concerning the release of the Hill attachment are in such general form as to add greatly to the force of the suggestion that the paper was an artful concealment of the fact. We are of opinion that the testimony on part of the defendant, on this subject, was such as justified a submission to the jury; it was sufficiently clear and precise to establish the fraud beyond doubt, if it was true, and its truth was for the jury. The testimony taken as a whole was contradictory and conflicting, but the jury must determine not only the credibility of the witnesses, but decide questions of fact upon conflicting evidence. The jurors have found the several agreements of 2d April, 1877, to have been obtained through the fraud and deceit of the plaintiffs, and we must accept their finding as an adjudication of that fact. These papers are therefore eliminated from the case; as against the present defendant they can have no force or validity.

Assuming then that Shakley was the surety of Spence, and that under the finding of the jury the agreements of 2d April, 1877, are not binding upon him, we may consider their effect upon his admitted obligation as a surety. Inoperative as they are against Shakley, they are certainly binding upon those who with a full understanding entered into them. The plaintiffs must accept the consequences which legitimately result from their own unfairness. By the express terms of this agreement it was provided, that when the order upon the

Argyle Savings Bank for $2,329 and the order upon the United Pipe Line for 191 barrels of oil should be honored and paid, and when all the costs accrued upon the attachments were paid, then the plaintiffs would release from "levy and attachment all other goods, chattels, moneys and property of said second parties which have been attached, levied on or seized upon attachment executions issued on said judgment, and that when said orders are paid, the defendants in said judgment shall be credited with the same as of 1,000 barrels of oil."

The amount received upon the order to the Argyle Savings Bank was but $2,041.42, and the oil received upon the order to the pipe line only 181 barrels; there was an alleged discrepancy or deficit of $635 between the amount of the orders and the amount realized upon them; but this deficit, if any existed, was, as the jury has found, otherwise provided for; the costs of the attachment were paid, all the moneys and effects of Shakley seized under the attachment were turned in to the plaintiffs in payment of Spence's debt, whilst the moneys and effects of Spence himself were released, and were subsequently received by him. The amount thus diverted from the proper channel and absorbed by Spence was $1,500, a sum sufficient, after deducting payments actually made and applied, to satisfy the judgment. It is a well recognized rule of equity that where a creditor has the means of compelling payment from the principal debtor, and by his own act gives it up, he thereby discharges the surety: Neff's Appeal, 9 W. & S. 36. This rule is but the corollary of another, that a surety on payment of the debt of his principal is entitled to be substituted to all the liens and other securities which the creditor holds; if, therefore, substitution be rendered fruitless by any act of the creditor, a release pro tanto, or for the whole, as the case may be, necessarily results; and it is not material whether the creditor knows, or does not know, at the time of the release of the relation of principal and surety between the debtors; if he be ignorant of the relation he should act accordingly: Holt v. Bodey, 6 Harris 207.

The amount of the debt released was a material fact for determination of the jury. We discover no error in the methods pursued at the trial for the ascertainment of the sum due to Spence from Hill. The original contract between them, the testimony of the parties to that contract, the record of the proceedings on the attachment, the answer of the garnishee, forming part of that record, were all, we think, proper and legitimate proof. The objection that the garnishee's answer, contained in the record of No. 240, March Term,

1877, instead of No. 138, June Term, 1877 is under the circumstances unavailing, as the record of the judgment and of the several attachment executions were but the record of a single case; if the papers were confused in their arrangement by the officer they might be read in their proper place.

We have carefully examined this record, and we find no errors therein which move us to disturb the verdict.

The judgment is therefore affirmed.