ABRAM DUNN, APPELLANT, *v.* CORNELIUS PARSONS, RESPONDENT.

*Accommodation indorser — not absolutely discharged by the holders releasing real estate of the maker from the lien of a judgment on the note.*

This action, brought against the defendant as an accommodation indorser of a note, was defended upon the ground that the plaintiff, by voluntarily releasing certain real estate owned by the makers of the note from the lien of a judgment recovered upon it, had discharged the defendant from all liability as indorser. Upon the trial the evidence was conflicting as to whether or not the premises released were of sufficient value to pay in full or in part the plaintiff's claims after deducting the amount due upon prior liens.

The court refused to submit to the jury the question whether said releases had in any manner injured the defendant or impaired his security, and if so, to what extent, and directed a verdict in favor of the defendant.

*Held,* error.

*Vose* v. *The Florida Railroad Company* (50 N. Y., 369) followed, and *Fielding* v. *Waterhouse* (40 N. Y. Supr. Ct., 424) distinguished.

*Held,* further, that it would be incumbent on the plaintiff on the new trial to show clearly that the property released could not have been made available at all, or not beyond a certain amount, to the payment of the judgment on the note by reason of the prior incumbrances, and that to the extent of the value of the part released, the defendant was discharged.

APPEAL from a judgment in favor of the defendant, entered on a verdict directed by the court at the Erie Circuit.

*N. Morey,* for the appellant.

*George Clinton,* for the respondent.

SMITH, P. J.:

The plaintiff was sued as indorser of a promissory note made by J. Getz & Co. The defense litigated was, that the creditor had voluntarily released certain real estate belonging to the makers from the lien of a judgment which he had obtained against them on said note before suing the indorser. The real estate consisted of three parcels, one of six and $\frac{84}{100}$ acres of land in the city of Buffalo, and two in the town of Tonawanda, containing eighty-three and $\frac{89}{100}$ acres and 141 and $\frac{45}{100}$ acres of land, respectively. The claim in suit was for $5,000, and interest from June, 1872. At the trial evidence was given on the part of the plaintiff tending to show that the premises released were incumbered by prior liens to the extent of the full value of the premises. The defendant gave evidence tending to show that the premises released were of sufficient value to pay the judgment and the prior incumbrance in full.

The defendant's counsel moved the court to direct a verdict for the defendant. The plaintiff's counsel objected, and asked the court to submit to the jury the question whether said releases, or either of them, had in any manner injured the defendant or impaired his security; and if so, to what extent. The judge declined to submit said question to the jury, and directed the jury to render a verdict for the defendant, to which refusal and direction the plaintiff's counsel duly excepted. Upon those exceptions arises the only question in the case.

The defendant was an accommodation indorser, and consequently was a mere surety for the makers of the note. And the holder of the note having obtained a judgment upon it, which became a lien upon the real estate of the makers, or one of them, the defendant,

as surety, was entitled to regard the judgment and its lien as security for the principal debt, and to be subrogated in the place of the creditor in respect to the judgment and its lien, in case he paid the debt. The creditor having voluntarily released the lien of the judgment upon the real property of the principal debtor, it is now contended on the part of the defendant, as it was at the trial, that he is absolutely discharged from liability, without reference to the question whether he was actually damnified by the release, or, if damnified, to what extent. And it is claimed that there is a distinction in this respect between cases where the release is the voluntary act of the creditor and those in which it is the result of mere laches on his part.

The case of *Vose* v. *The Florida Railroad Company* (50 N. Y., 369), is an authority adverse to that contention. It was held in that case that a sale by a creditor of collateral securities, placed in his hands by the principal debtor, in violation of a stipulation for a particular notice of sale contained in the contract under which they were pledged, does not, *per se*, discharge a surety, *in toto*, who is liable for the debt, but by such sale the creditor makes the securities his own to the extent of discharging the surety to an amount equal to their value. ANDREWS, J., speaking for all the members of the court who voted in the case, said : " The act of the creditor did not change the contract upon which Yulee was surety, and the rights of all parties will be fully protected if it shall be held that the debt was discharged to the extent of the value of the bonds sold in contravention of the contract. It is not difficult to measure the loss actually sustained by the conversion or misapplication by the creditor of the securities in his hands. It would be contrary to equity to discharge the surety *in toto*, in consequence of a release by the creditor of a security without reference to its value." And he cited the following authorities confirming this view : Story's Equity Jurisprudence ( § 326); *Capel* v. *Butler* (2 Sim. & Stu., 457) ; *Law* v. *East India Company* (4 Ves., 833); *Payne* v. *Commercial Bank of Natchez* (6 Sm. & Marsh, 24) ; *Neff's Appeal* (9 W. & S., 36).

The learned counsel for the respondent places his contention upon another ground, also, that even where a surety would ordinarily be discharged *pro tanto* only, yet, if the act of the creditor has rendered it impossible to estimate correctly what would be the value

of the security affected, through the time it could be kept alive, the surety becomes absolutely discharged. He cites the case of *Fielding* v. *Waterhouse* (40 N. Y. Supr. Ct., 424). That was not the case of a discharge of a particular piece of property from the lien of a judgment, but the judgment itself was discharged, and the decision proceeded on the idea that it was impossible to say what would have been its value if it had been kept alive. Here, however, the value of the real estate discharged was capable of being ascertained. We think, therefore, the direction to render a verdict for the defendant cannot be sustained and that there must be a new trial. For the purposes of the new trial we hold that it is incumbent on the plaintiff to show clearly that the property released could not have been made available at all, or not beyond a certain amount, to the payment of the judgment on the note by reason of the prior incumbrances, and to the extent of the value of the part released, the surety is discharged. (*Holt* v. *Bodey*, 18 Pa. St., 207.)

Judgment reversed, and new trial ordered, costs to abide event.

BARKER and BRADLEY, JJ., concurred; HAIGHT, J., not sitting.

Judgment reversed, and new trial ordered, costs to abide event.