## Letvin *v.* The Phoenix Insurance Company of Hartford, Connecticut, Appellant.

*Insurance—Automobile insurance—Delivery—Authorized agent— Cancellation clause—Compliance with.*

The delivery by an insurance broker of a policy of automobile insurance, and the payment of the premium to such broker constitutes a valid obligation, binding upon the insurance company.

It ought to be held that, under a clause, requiring the receipt of payment by the company, the insurers themselves waive it, whenever, by their voluntary act, the policy leaves the office to be delivered to the insured on payment of the premium; and this without regard to the fact that someone, having no nominal connection with the company as agent, hands over the policy and receives the premium.   By the very fact of issuing a policy which requires, apparently, nothing but delivery and payment of the premium to put it in force, the company arms every man into whose hands it may come with the power to receive its money; there could be no conduct more significant of an intention to waive the advantage of such a clause.

The provisions in an insurance policy as to cancellation must be strictly followed.   A letter cancelling the policy, but failing to set forth, in accordance with its provisions, that the unearned premium will be refunded, is not such a strict compliance with the terms of the policy, and does not constitute a legal cancellation.

A receipt for a lost policy and an agreement to cancel upon pay-

ment of a return premium may be contradicted, where the evidence raised a clear issue of fact for the jury as to whether or not the insured, who could not read, was deceived by the representations of the agent.

Argued December 13, 1926. Appeal No. 294, October T., 1926, by defendant, from judgment of Municipal Court of Philadelphia, August T., 1923, No. 922, in the case of Morris Letvin v. The Phoenix Insurance Company of Hartford, Connecticut. Before PORTER, P. J., HENDERSON, TREXLER, KELLER, LINN and CUNNINGHAM, JJ. Affirmed.

Assumpsit on policy of insurance. Before WALSH, J.

The facts are stated in the opinion of the Superior Court.

Verdict for plaintiff in the sum of $800.00 and judgment thereon. Defendant appealed.

*Errors assigned,* were various rulings on evidence, the charge of the court, answers to points and refusal of defendant's motion for judgment non obstante veredicto.

*Horace Michener Schell,* for appellant.

*Henry Arronson,* and with him *Gabriel D. Weiss,* for appellee.

OPINION BY PORTER, P. J., April 27, 1927:

The plaintiff applied to one Bradley, an insurance broker, to obtain for him a policy insuring him against loss by fire to an automobile and its equipment. Bradley applied to Wilkinson & Co., Inc., for the policy. Wilkinson & Co., also insurance brokers, applied to Sigourney Mellor & Co., insurance brokers, and the last named firm applied to the agents of the defendant company for the policy of insurance desired. The policy was issued by the company on March 6,

1922, and, by the agent of the defendant insurance company, was delivered to Sigourney Mellor & Co., who in turn delivered it to Wilkinson & Co., Inc., who in turn delivered it to Bradley, and the latter delivered it to the plaintiff who paid to him the premium called for by the policy. Bradley did not pay the premium which he had received from the insured to Wilkinson & Co., nor did. Wilkinson & Co. pay Mellor & Co., nor did Mellor & Co. pay the amount of the premium to the agent of the defendant company. It appeared in evidence that the agent of the defendant company had an account with Sigourney Mellor & Co. and extended credit to those brokers for the premiums on policies placed in their hands for delivery; that Mellor & Co., and the other brokers through whose hands the policy passed for delivery to the insured had mutual accounts with each other, respectively, and extended to each other credit for the premium on the policy as it passed through their hands. The automobile was destroyed by fire on December 30, 1922, and the plaintiff promptly forwarded proofs of loss to defendant company, whereupon the defendant company, by its general adjuster, wrote a letter to the plaintiff, returning the proofs of loss, and denying liability upon the policy, upon the express ground that the policy had been cancelled in April, 1922. The plaintiff thereupon brought this action on the policy and recovered a verdict and judgment in the court below, from which we have this appeal.

The first six assignments of error refer to rulings of the court upon the admission of evidence and are without merit. Some of the evidence admitted, under the exceptions upon which these assignments are based, was totally immaterial and ought to have been rejected; it had no bearing on the rights of the parties. But judgments are not to be reversed merely because of error in the reception of evidence which had nothing to do with the case, unless that evidence might rea-

sonably be held to have prejudiced the cause of an appellant. We have carefully considered all this evidence and are convinced that it could not possibly have prejudiced the cause of the defendant, and the assignments of error are dismissed. There were but two questions really involved in this case. (1) Did the payment of the premium by the insured to Bradley, the broker into whose hands the policy had come, give vitality to the contract and constitute an obligation binding upon the defendant company? (2) Was the policy cancelled by the company, in April, 1922, in a manner which relieved it of liability?

The appellant contends that the payment of the premium to Bradley was not the equivalent of payment to the insurer, and in support of this proposition cites the case of Pottsville Fire Ins. Co. v. Minnequa Springs Imp. Co., 100 Pa. 137. The decision in the case cited has been repeatedly discussed in subsequent opinions by the Supreme Court and distinguished, on its peculiar facts and the covenants of the policy there considered, and subsequent declarations of the Supreme Court have weakened its authority. Mr. Justice SADLER, in the opinion in Transcontinental Oil Co. v. Atlas Assurance Co., 278 Pa. 564, quotes with approval the language in the opinion of Mr. Justice DEAN, in Arthurholt v. Fire Ins. Co., 159 Pa. 1, as follows: "It ought to be held that, under a clause [requiring the receipt of payment by the company], the insurers themselves waive it, whenever, by their voluntary act, the policy leaves the office to be delivered to the insured on payment of the premium; and this without regard to the fact that someone, having no nominal connection with the company as agent, hands over the policy and receives the premium. By the very fact of issuing a policy which requires, apparently, nothing but delivery and payment of premium to put it in force, the company arms every man into whose hands it may come with the power to receive its money;

there could be no conduct more significant of an intention to waive the advantage of such a clause than this." In the present case the defendant company seems to have recognized these principles and to have considered the policy a binding obligation, for when in April, 1922, it attempted to cancel the policy (the effect of which attempt we shall later consider), it said nothing about the failure of the premium to reach the company, but merely stated its intention to cancel the policy and "that at the expiration of five days as provided by the conditions of the policy, this Company will not be liable for any loss or damage to automobile insured hereunder." This was clearly an implied recognition of the policy as an existing obligation of the company, and would naturally lead an insured to believe that he had made no mistake in paying the premium to the broker who delivered the policy. An insured would thus be lulled to sleep and refrain from making any investigation as to whether the premium had reached the treasury of the company. The court below did not err in refusing to instruct the jury that the policy had never become a valid obligation of the defendant company.

Was the policy lawfully cancelled? Following the standard form of policy, required by the Act of May 17, 1921, P. L. 682, the provision as to cancellation contained in this contract was as follows: "This policy may be cancelled at any time by the company by giving to the assured a five days written notice of cancellation, with or without a tender of the excess of paid premium above the pro rata premium for the expired term, which excess if not tendered shall be refunded on demand. Notice of cancellation shall state that excess premium (if not tendered) will be refunded on demand." The law requires that when a policy is to be cancelled, the conditions on which the right is exercised must be strictly complied with,

unless the insured waives this requirement. To successfully terminate the relation of insured and insurer, the company must give written notice of such cancellation to the insured, that the relation will terminate at the end of five days from the receipt of such notice. The defendant company, on April 5, 1922, mailed to the plaintiff a letter, which was received by the latter, giving notice of an intention to cancel the policy, the material part of which is as follows: "Please note that at the expiration of five days as provided by the conditions of the policy, this Company will not be liable for any loss or damage to automobile insured hereunder. Please return document to our office in stamped return envelope, and oblige." This notice did not effect the cancellation of the policy for the reason that the policy required that "the notice must state that the excess premium (if not tendered) will be refunded on demand": Pomerantz v. Mutual Fire Ins. Co., 279 Pa. 497. The defendant company offered as further evidence of the cancellation of the policy a written instrument which was called "Receipt for Lost, Destroyed or Mislaid Automobile Policy," which was signed by the plaintiff. This instrument recited that the policy had been issued by the agent of the defendant company, at Philadelphia, that it would expire on March 6, 1923, and that it was lost, destroyed or mislaid and could not be found, and that the assured agreed that if said policy was found it should be returned at once to the office of the company; "and in consideration of $21.60 return premium, receipt of which is hereby acknowledged, said policy is hereby cancelled, and the Phoenix Insurance Company is hereby forever released and discharged from all liability thereunder." The signature of the plaintiff to this writing was witnessed by E. L. Macht, who was an employee of the agent of the defendant company. It was an undisputed fact that the plaintiff was

an illiterate man, who could neither read nor write English, although he had acquired the skill to write his own name. Macht testified that he had made known to the plaintiff the contents of the instrument and that the plaintiff signed it, but that witness also testified that no return premium was paid, although the writing specifically stated that the plaintiff acknowledged the receipt of the money. Letvin, on the other hand, testified that he could not read the instrument and was not aware of its contents; that he asked Macht to make known to him the contents of the instrument and that Macht told him that it was a petition for the improvement of the streets in Wissinoming, which was to be signed by the business men of that suburb and presented to the authorities at City Hall, Philadelphia. This was not an attempt to reform, or modify covenants of a contract, nor an attempt by one who knew the contents of a paper which he signed to be relieved from the effect thereof upon the ground that he had been led to execute it by misrepresentation of some collateral facts. It was, on the other hand, an endeavor to overcome the instrument wholly and set it aside, upon the ground that he had been misled as to the contents thereof, that it was, in fact, not his deed: Stoever v. Weir, 10 S. & R. 25; Green v. North Buffalo Township, 56 Pa. 110; Schuylkill County v. Copley, 67 Pa. 386; Templeton v. Shakley, 107 Pa. 370. The testimony of the plaintiff that he was ignorant of the contents of this release; that the contents thereof had been misrepresented to him by the employee of the defendant; that he did not know that Macht was connected with the insurance company or was in the insurance business, was clear and positive, and sufficient to require the submission of the question of the validity of the release to the jury: Gordon v. Great Atlantic & Pacific Tea Co., 243 Pa. 330.

The assignments of error are overruled and the judgment is affirmed.