# Pottsville Mutual Fire Ins. Co. *versus* Minnequa Springs Improvement Co., to use, etc.

A. desiring to effect a policy of insurance upon certain premises, applied to B., an insurance broker, to procure it for him. B. applied to another broker C., and C. to still another broker D. D. applied to the agent of an insurance company, who agreed to take the risk. Neither B., C. nor D. were agents of the company in question. In due time, the agent aforesaid made out, and delivered the policy to D., but without demanding payment of the premium. The policy contained a clause, specially providing that it should not be considered binding, until actual cash payment of the premium into the office of the company; and it was further stipulated therein, that no waiver of any provision thereof should be effectual, unless in writing under the signature of the secretary of the company, and that no agent should have power to violate any of the said provisions. D. transmitted the policy to C., C. to B., and B. to A. A. paid the premium to B., and B. paid it to C.; but C. never paid the same to D., nor did D. pay it to the company, or its agent. A loss having occurred under the policy, and suit being brought thereon by A., the company defended on the ground, that the policy had never gone into effect by reason of the non-payment of premium. *Held*, that the action of the agent of the company in transmitting the policy without receiving the premium thereon, did not amount to an attempt on his part to waive the conditions thereof, in that respect. *Held* further, that even if said action did amount to an attempt on his part to waive said conditions, such waiver was of no force or effect, because beyond the scope of his power, under the terms of the policy. *Held* further, that B. was to be regarded as the agent of A., and not of the company; and that therefore the payment of the premium to him was not a compliance with the conditions of the policy. *Held*, therefore, that the company defendant was entitled to judgment.

March 15th 1882. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

ERROR to the Court of Common Pleas of *Bradford county :* Of January Term 1881, No. 294.

Debt, on a policy of fire insurance, by the Minnequa Springs Improvement Company to use of Benjamin S. Bently, trustee,

100 137
159 7

100 137
182 67

100 137
28 SC 432
28 SC 604

100 137
31 SC 465

100 137
34 SC 249

100 137
37SC 262

[Pottsville Mut. Fire Ins. Co. *v.* Minnequa Springs Imp., to use, &c.]

&c., against the Pottsville Mutual Fire Insurance Company. Pleas, nil debet, payment with leave &c.,

On the trial, before INGHAM, P. J., the policy was put in evidence which contained, inter alia, the following conditions:—

"No insurance, whether original or continued, shall be considered as binding until the actual cash payment of the premium, into the office of the company."

"And said company shall in no case be deemed to have waived a full, literal and strict compliance with and performance of each and every of the terms, provisions, conditions and stipulations in this policy contained, and hereto annexed, to be performed and observed by and on the part of the insured, and every person claiming by, through or under them, unless such waiver be express, and manifested in writing, under the signature of the secretary of said company. And no agent of this company shall have power to violate any of these conditions." "No agent of this company shall have the right or power to waive any of the foregoing conditions, unless fully authorized thereto by the secretary of this company in writing."

The evidence showed that Jacob Tome, the president of the Minnequa Springs Improvement Company, plaintiff, upon the solicitation of one Dr. Green, an insurance broker, employed him to place a line of insurance on the hotel property of plaintiff. Dr. Green being unable to place the entire amount in the several companies which he represented, applied to another insurance agent, H. J. Clinger, who effected additional insurance in certain companies, and he in turn applied to another insurance broker, Robert Crane, to place $5000 of the insurance. None of these parties represented the company defendant. Crane, who lived in Philadelphia, applied to Albert S. Haeseler, the Philadelphia agent of the company defendant, who agreed to take $2,500 in the said company. He made out and delivered to Crane a policy of said company defendant for that amount, dated September 25th 1878. This policy was duly executed by the president and secretary, sealed with the corporate seal, and countersigned by Haeseler, as agent. Crane did not pay the premium to Haeseler, but credited him with it on his register, and forwarded the policy to Clinger, who delivered it to Dr. Green, who handed it over to Mr. Tome, the president of the company plaintiff. Tome immediately paid the premium to Green, who paid it to Clinger. It was never paid by Clinger to Crane, or by Crane to Haeseler. About a week after Haeseler delivered the policy to Crane, he told Crane that he desired to recall it, as the home office did not approve the risk. It was never in fact returned.

The premises in question were destroyed by fire November

12th 1878, and, the defendant company refusing to pay the loss, this suit was brought March 29th 1879.

The defendant requested the court to charge, in substance, inter alia, that under the terms of the policy it was not binding until the actual cash payment of the premium into the office of the company, and as the undisputed evidence is that the premium was not so paid or tendered until after the fire, the policy never went into effect, and the verdict must be for the defendant.

The court declined so to charge, and submitted the case to the jury upon the evidence, with instructions, inter alia, that if the credit made on the books as between Crane and Haeseler at the time the policy was delivered was regarded by them as a completed consideration, and such a one as could have been collected, then this contract was a complete and valid contract and could be enforced.

Verdict and judgment for the plaintiff for $2,244. The defendant thereupon took this writ of error, assigning for error, inter alia, the submission of the case to the jury, and the refusal of the court to charge as requested.

*A. W. Schalck* and *John F. Sanderson* (*Overton* with them), for the plaintiff in error.—The condition that the policy should not be binding until the actual payment of the premium in cash was not fulfilled by the credit entry of Crane, the agent of the insured, in favor of Haeseler, the agent of the insurer. The premium never was paid at all and the policy was recalled before the fire. Haeseler was by the express terms of the policy expressly debarred from power to waive any condition of the policy: Marland *v.* Royal Ins. Co., 21 P. F. Smith 393 ; Greene *v.* Lycoming Fire Ins Co., 10 Norris 389 ; Mentz *v.* Lancaster Fire Ins. Co., 29 P. F. Smith 475 ; Waynesboro Mut. F. Ins. Co. *v.* Conover, 2 Outerbridge 384.

*Bently* and *Williams* (with them *Parker, Angle* and *Buffington*), for the defendant in error.—The policy was duly executed and delivered by the insurance company, through their accredited agent to the plaintiff, who in good faith paid the premium to the person from whom he received it. This is all that was necessary to constitute a binding contract between the parties. The plaintiff was in no default. Insurance companies cannot, by wordy and obscure printed conditions indorsed on a policy, cast on a bona fide insurer the loss resulting from errors of their own agents acting within the scope of their employment. Dr. Green was the plaintiff's agent for the application for the insurance ; after the insurance was effected, he became the defendant's agent in the transmission and delivery of

[Pottsville Mut. Fire Ins. Co. *v.* Minnequa Springs Imp., to use, &c.]

the policy and receipt of the premium. If the premium failed to reach the company, it was not the plaintiff's fault, and he cannot be deprived of his rights evidenced by the complete contract. A principal cannot at the same time confer general power upon an agent, and stipulate that he will not be bound by acts performed by such agent within the scope of such employment. The agent here was entrusted with policies executed in blank, to become valid when countersigned and delivered by the agent; and persons dealing with such an agent are not bound to look beyond his apparent authority: Wood on Insurance, 614, 615, 667, 669, 670, &c.

Mr. Justice Green delivered the opinion of the court, May 1st 1882.

The sixth condition of the policy in suit is in the following words : " No insurance, whether original or continued, shall be considered as binding until the actual cash payment of the premium, into the office of the company."

The policy on its face contains as one of its terms the following provision : " And it is moreover agreed and declared, that this policy is made and accepted in reference to the application, also the conditions hereto annexed, which are hereby made a part of this policy, and to be used and resorted to, in order to explain the rights and obligations of the parties hereto."

It cannot be doubted that both parties to this contract agreed that it was not to be binding until the premium was paid in cash into the office of the company. The question whether such an agreement is unreasonable, is immaterial. It is the actual contract of the parties and it binds them and necessarily controls the action of the courts, who have no power to alter the solemn contracts of parties where there is neither fraud, mistake nor imposition. In the present case the premium was never paid into the office of the company, nor was it paid in any manner to the company, or to its authorized agent. But it is claimed that in point of fact the assured did pay the premium, and that he paid it in such a manner as that the company is bound by it.

It is true that the premium was paid by the assured, and the question is whether the manner of the payment was such as to obligate the company on the policy. This leads us to consider the precise facts affecting the subject. Jacob Tome was the president of the Minnequa Springs Improvement Company, the plaintiff in the suit, and was also a bond-holder under a mortgage on the property of the company. Desiring to have the property insured, he negotiated with one Dr. S. F.

[Pottsville Mut. Fire Ins. Co. *v.* Minnequa Springs Imp., to use, &c.]

Green, who was engaged in the business of placing insurances, who undertook to obtain policies to the amount of $25,000 on the hotel and furniture.    Dr. Green testified that he represented several companies as agent; but he did not represent the company defendant in this case.    He also said that he went to Mr. Tome and solicited the insurance.    Dr. Green was unable to place the whole amount of the desired insurance and he thereupon applied to H. J. Clinger, another insurance-agent and broker, but who did not at that time represent the defendant.    Clinger testified that Green applied to him to place the whole $25,000 and that he did place $20,000 in companies for which he was agent, and the other $5,000 he sent to Mr. Robt. Crane, a broker, in Philadelphia.    Green and Clinger resided at Williamsport and conducted their business at that place. Crane, testified that he was an insurance agent and broker doing business in Philadelphia, but that he was not the agent of, nor had any connection with the defendant. .

He further testified that as an insurance broker simply, he applied to Mr. A. S. Haeseler, the agent of the defendant in Philadelphia for a policy of $2,500 on the hotel property, to be issued by the defendant.    The latter, after examination of the risk, accepted it, and made out and delivered to Crane the policy in suit.    He subsequently notified Crane that his company declined the policy and endeavored to get it back, but without success.    Haeseler delivered the policy, properly executed, to Crane, without payment of the premium.    Crane sent it to Clinger, who delivered it to Green, and the latter delivered it to Tome. Upon its receipt by Tome he paid the premium to Green, who paid it to Clinger.    It was never paid by Clinger to Crane, or by Crane to Haeseler.    As between themselves Clinger had credited Crane with the amount on his books, but he owed Crane a still larger amount, the whole of which, including this premium, was credited, but in point of fact the premium was never paid by Clinger to Crane or to any one else.    The question then arises whether the defendant is liable on the policy against the express provision of the contract.    It was contended that the payment of the premium was waived by Haeseler, the agent of the company, when he delivered the policy, fully executed, to Crane for the purpose of being delivered to Tome.    There certainly was no express waiver, no actual agreement to dispense with the payment of the premium.    There was no declaration or assertion of any kind by Haeseler that the policy would be binding before the premium was paid to him or to the company. When Tome received the policy he must be presumed to have received it with full knowledge of its contents.    A mere inspection of the instrument would have informed him that the delivery of the policy to him created no obligation on the part of the company

until the premium was actually paid to the company itself. He was not misled upon this subject by any act or declaration of any person. He paid the premium to one who was not an agent of the defendant, and, of course, he took the risk of the money reaching its destination. But even if any person, agent of the company or otherwise, had undertaken to waive this condition of the policy, such attempt would have been entirely abortive, unless it was made in accordance with the terms of the policy. The eleventh condition of insurance, annexed to and made a part of the policy, contains an express condition that no waiver shall be effective, unless it "be express, and manifested in writing under the signature of the secretary of said company. And no agent of this company shall have power to violate any of these conditions." And the nineteenth condition provides as follows—" No agent of this company shall have the right or power to waive any of the foregoing conditions, unless fully authorized thereto by the secretary of this company in writing." In the case of Waynesboro Mutual Fire Ins. Co. *v.* Conover, 2 Out. 38, we held the insured bound by just such an agreement as this, and we know of no reason why we should not hold the same rule in the present case.

It is not necessary to consider the question of the necessity of a payment literally into the office of the company, because it does not arise. There was no payment, either at the office of the company, or to the company generally, by mail or otherwise, or to any agent of the company. Neither Green nor Clinger was an agent of the defendant, and Haeseler, the authorized agent of the company, never received the premium. In the case of Greene *v.* Lycoming Fire Ins. Co., 10 Norr. 389, in commenting upon this subject we said, " The body of the policy contained a condition that the company should not be liable by virtue of the policy, 'until the premium therefor be actually paid,' and that 'no agent is empowered to waive any of the conditions of this policy, either before or after a loss, without special authority in writing from the company.' The defendant gave no written or verbal authority to Thompson, to waive any of these conditions. By sending the policy to him, the company did not waive the requirement of actual payment of the premium before delivery. Nothing in the application or in the policy indicated that Thompson could make the company liable on the policy by delivering it before the premium was paid." In that case Thompson was the agent of the company. So here, when Haeseler delivered the policy to Crane, both he and the company had a right to rest upon the positive provision of the policy, that it was not to be binding until the actual payment of the premium to the company. We do not decide as to what would have been the effect of a pay-

ment to Haeseler, because the facts of the case do not raise that question.   What we do decide is, that as there was no payment either to the company or to Haeseler, the policy never became operative.   The same doctrine was announced in Marland *v.* Royal Ins. Co., 21 P. F. S. 393.   On p. 396, AGNEW, J., said, " Having no authority to deliver without payment of the premium, it is obvious Thompson's willingness to do so, or to give credit, can create no contract with his principals . . . . The premiums are the very bread upon which the company feeds. All its sustenance and ability to pay its losses are drawn from this source, and the payment constitutes the only consideration and just title of the insured, to demand payment of the loss. What was testified, therefore, about the company's having accepted the risk, and having delivered the receipt and policy to Thompson, as the broker and mutual agent of the parties, creates no contract.   Accepting the risk meant no more than a willingness to make the insurance, but indicates no purpose to waive payment of the very consideration which moves the company to insure.   It changes none of the terms of the policy to be issued.   To make a different contract, there must be evidence of the company's assent to the change, of which there is not a spark in the case."

The suggestion that Dr. Green is to be regarded as the agent of the defendant, and that, therefore, the payment of the premium to him was a payment to the company, is not tenable. It is the well settled law that where one engages another to procure insurance for him, the person thus employed is the agent of the employer, and not of the company.   Thus, in Hartford Fire Ins. Co. *v.* Reynolds, 36 Mich. 502, it was held, that so far as an insurance agent acts as an insurance broker, he is agent for the insured, and not the insurer.

In Standard Oil Co. *v.* Triumph Ins. Co., 64 N. Y. 85, it was held, that an insurance broker employed by a party to effect insurance for him, may be regarded by the insurer as clothed with full authority to act for his principal in procuring, modifying or cancelling policies; and his acts in these respects are binding upon his principal.   See also May on Ins. § 123; Lycoming Fire Ins. Co. *v.* Ruben, Sup. Ct. of Ill. reported in 8 Chic. Leg. News 150.

When Mr. Tome paid the premium to Dr. Green in this case, he simply paid it to his own agent, and was not in any manner relieved of his express contract obligation to pay it to the company.   The payment by Green to Clinger was in no way more effective.   Clinger was Green's sub-agent, and was merely a selected vehicle for the transmission of the money. If he failed to perform his duty, the consequences must fall upon those who engaged him for that purpose.   These consid-

[Gillespie *v.* McGowan.]

erations dispose of the case.   There is no question as  to the es-
sential facts.   Mr. Tome himself testified to the payment of the
premium to Green, and  to  the  procurement  of  the  insurance
through him.   It is unnecessary to notice the assignments other
than those which are affected by the views above expressed.

Judgment reversed.