# CASES

IN

# THE SUPREME COURT

OF

# PENNSYLVANIA.

Arthurholt *v.* Susquehanna Mut. Fire Ins. Co., Appellant.

[Marked to be reported.]

$\frac{159}{26 \text{ SC } ^{1}149}$,

$\left| \frac{159}{\text{f } 33 \text{ SC } ^{1}501} \right|$

*Insurance policy—Payment of premium—Agent—Waiver.*

A provision in a policy of insurance providing that the policy shall be void unless payment of the premium shall be made to the secretary or an agent duly appointed as such in writing; is not intended to make the insured answerable for the default of the company's own agent; and where the company itself, either expressly or by acts which warrant the implication, has in fact appointed an agent to deliver a policy and collect the premiums, the receipt of the money by such agent is the receipt by the company, and operates as a waiver of the condition.

A policy of fire insurance provided that if the premium should not be paid to the secretary " or an agent of the company duly appointed as such in writing, within fifteen days from the date of its issue," the policy should be void. Before the policy was issued the assured applied to a local insurance agent, who could not place the risk in any of the companies he was agent for. He therefore applied to an insurance broker in Philadelphia. The broker applied to defendant, an insurance company. Defendant issued a policy, sent it by mail to the broker of Philadelphia, who immediately sent it by mail to the local insurance agent, who by mail delivered it to plaintiff. On the day after the receipt of the policy plaintiff sent a check for the premium to the local insurance agent, who duly received it, and drew the money from the bank, but did not pay it over either to the broker in Philadelphia, or to defendant company. About seven weeks after the policy was issued the property of the insured was destroyed by fire. In an action on the policy it appeared that the

broker was in the habit of placing insurance for defendant, and was allowed a commission of twenty per cent of the premium. It also appeared that the local insurance agent was the mere representative of the broker for the transmission of the policy and the reception and remittance of the premium. *Held*, that plaintiff was entitled to have the case submitted to the jury.

The rule laid down in Marland v. Royal Ins. Co., 71 Pa. 393; Greene v. Lycoming Ins. Co., 91 Pa. 387, and Pottsville Ins. Co. v. Minnequa Springs Imp. Co., 100 Pa. 137, criticised by Mr. JUSTICE DEAN.

Argued Oct. 19, 1893. Appeal, No. 146, Oct. T., 1893, by defendant, from judgment of C. P. Mercer Co., Sept. T., 1892, No. 58, on verdict for plaintiff, C. F. Arthurholt. Before WILLIAMS, McCOLLUM, MITCHELL, DEAN and THOMPSON, JJ.

Assumpsit on fire insurance policy. Before MEHARD, P. J. The facts appear by the opinion of the Supreme Court.

The court charged in part as follows:

" [The first question arising in the order in which we have stated the issue is as to the validity of the policy. First, was the payment made to W. J. McKean a sufficient payment to entitle the plaintiff to recover in this case. Whether it was or not, in the view we take of it, is a mixed question of law and of fact. The policy upon which this suit is brought contains the following provision: ' This entire policy, unless otherwise provided by agreement indorsed in writing, or added hereto, shall be void if the premiums of this policy or any renewal of the same shall not be paid to the secretary of the company, or to an agent of the company duly appointed as such in writing, within fifteen days from the date of issue.'

" There is no allegation on the part of the plaintiff that the premium on the policy was paid to the secretary of the company, neither is there an allegation upon the part of the plaintiff that the premium was paid to an agent of the company authorized in writing. The plaintiff alleges that the payment was made to W. J. McKean; that W. J. McKean, while he represented the plaintiff in applying for the policy to J. M. Downing, represented J. M. Downing in delivering the policy and receiving the pay, and that J. M. Downing represented the defendant company, and that the defendant company, by its secretary, Mr. Huntziger, waived this provision of the policy requiring payment to be made to the secretary or to an agent of the company authorized in writing.

" Upon the part of the defendant it is contended that there is no evidence in this case which the court should submit to you to find whether or not J. M. Downing was in any sense the agent of the company, whether there was a waiver of this provision of the company, or whether the payment by the plaintiff to W. J. McKean was a sufficient payment to render the policy valid.

" We submit the question to you, however, gentlemen of the jury, in the belief that there is evidence sufficient to submit. In submitting that evidence you will not understand us to say to you that we submit it to you because the evidence requires you to so find. Whether you should find the facts as contended for by the plaintiff or as contended for by the defendant upon this branch of the case is for you to say. All we are called upon to do is to determine whether the evidence is sufficient to submit to you. If there was no evidence at all upon that point, then the court should withhold the evidence and say to you as a matter of law that you should find for the defendant; but being of the opinion that there is evidence upon that point to go to the jury we therefore submit it to you, and you are to say whether the evidence that is in this case upon both sides ought to lead you to the conclusion that the defendant waived that provision or did not. If there was a waiver of the provision, then that branch of the defence would fall and your inquiries would be confined to the other branches of the case. If there was not a waiver of that provision then your verdict would have to be for the defendant, whatever you might think about the merits of the case upon the other branches.] " [1]

Defendant's request for binding instruction was refused. [2]
Verdict and judgment for plaintiff. Defendant appealed.

*Errors assigned* were (1–2) instructions, quoting them.

*S. H. Miller,* *Q. A. Gordon* and *J. C. Miller* with him, for appellant.—The assured could not plead ignorance as to the status of McKean. He was warned by the policy that unless the premium was 'paid to the secretary, or a duly authorized agent of the company, within fifteen days from date of its issue, the entire policy would be void. McKean was the agent of the assured, not of the company, and when the assured paid

him the premium he assumed the risk of the premium reaching the company.

There was no sufficient evidence of a waiver to submit to the jury : Pottsville Mut. Fire Ins. Co. v. Minnequa Springs Imp. Co., 100 Pa. 137 ; Greene v. Lycoming Fire Ins. Co., 91 Pa. 387; Hartford Fire Ins. Co. v. Reynolds, 36 Mich. 502.

*E. P. Gillespie, B. Magoffin* with him, for appellee.—The court was right in submitting to the jury evidence of waiver by the company of strict compliance by the insured with the condition of the policy.

This case is not like any of those cited by appellant. In the case of Greene v. Lycoming Fire Ins. Co., 91 Pa. 387, the policy was never delivered, and had been returned by the local agent to the general agent of the company before the loss by fire occurred. In the case of Pottsville Mut. Fire Ins. Co. v. Minnequa Springs Imp. Co., 100 Pa. 137, there was an express provision in the policy that it was not to be "binding until the actual cash payment of the premium into the office of the company." So also in the case of Marland v. Royal Ins. Co., 71 Pa. 393, there was a provision that "no insurance proposed is to be considered in force until the premium is actually paid." In not one of those cases had the contract gone into operation for the reason that the condition of prepayment of the premium to the company had never been fulfilled.

As it was the custom of this company to allow to brokers twenty per cent of the premiums on insurance placed by them, it is evidence of a custom to waive the letter of the condition requiring the premium to be paid to an agent appointed in writing, and in such cases the company would be estopped from setting up that condition to bar recovery in event of loss. Paying the broker is also a test of his agency for the company : Indiana Ins. Co. v. Hartwell, cited in Insurance Year Book, 1891, p. 101.

OPINION BY MR. JUSTICE DEAN, December 30, 1893 :

Arthurholt, the plaintiff, was a retail merchant in Clarksville, Mercer county ; he owned the building containing his stock of goods; in January, 1892, he applied to McKean, an insurance agent in Mercer, Pa., for insurance on the building

and goods; McKean could not place the risk in any of the companies he was agent for, so he applied to Downing, an insurance broker in Philadelphia, to get the insurance; Downing applied by letter to the Susquehanna Mutual Insurance Company, this defendant, having its office at Harrisburg, to take a risk of $1,000 on the goods and $300 on the building; the defendant, in response, on 13th of January, 1892, made out the policy, and transmitted it by mail to Downing at Philadelphia, who immediately sent it by mail to McKean at Mercer, who by mail delivered it on January 27th to Arthurholt, the plaintiff, at Clarksville; the next day Arthurholt forwarded by check the premium, $19.50, to McKean, who duly received it and drew the money from the bank, but he did not pay it over to either Downing or the insurance company. On the 3d of March, 1892, both goods and building were destroyed by fire.

The defendant refused to pay any part of the loss, because: (1) The premium was not actually paid to the company, as required by the term of the policy. (2) There were fireworks in the building at the date of the insurance, and this, by a stipulation in the policy, rendered it void. (3) There was other insurance, making in the aggregate more than two thirds the value of the property, and this avoided the policy.

Under the instructions of the court on the evidence, there was a verdict for plaintiff; hence this appeal.

It is very clear the court was right in submitting the conflicting evidence on the questions of fact, raised by the second and third objections of defendant, to the determination of the jury; but as counsel for appellant has not pressed the assignments of error to the instruction in these particulars, they may be dismissed.

As to the first objection, which is embraced in the first assignment of error, it is earnestly argued, that, on the undisputed facts, the court should have directed a verdict for defendant. The stipulation in the policy, which, it is urged, must defeat a recovery, is as follows: "If the premium for this policy or for any renewal of the same, shall not be paid to the secretary or an agent of the company duly appointed as such in writing, within fifteen days from the date of its issue," then the policy shall be void. It will be noticed, the premium money was paid to McKean, who was neither the secretary nor an

agent of the company, duly appointed by writing; he had no official connection whatever with the company. But the company's formally attested policy came into his hands for delivery to the insured. Why? Because it was sent to him by Downing for that purpose; he was, then, the mere representative of Downing, the vehicle chosen by him for the transmission of the policy, and the reception and remittance of the premium; this appears from the testimony of both Downing and McKean. Downing's agency was not by a formal written appointment; defendant denies that he was its agent at all. He testified he had been an insurance broker, with an office in Philadelphia for fifteen years; that he had placed a number of risks with defendant company before he applied for this policy; always collected the premiums, and remitted them, less his commissions, to the company; that on his application the company sent him this policy, and he sent it to McKean to deliver to the insured, and collect and remit the premium to him. For negotiating and placing these risks, the company allowed him, Downing, a commission of twenty per cent of the premium, he remitting to the company eighty per cent. He did not deny his liability to the company for the premium. If the company delivered this policy to Downing, on the understanding that he was to deliver it to the insured, collect the premium, retain his percentage, and remit the balance to the company, certainly, whatever may have been his attitude before that time while negotiations were pending, he was the agent in fact of the company for the delivery of the policy and the collection of the premium; as fully the agent of the company as if the secretary had handed him the policy in the company's office, with instructions to deliver it to the insured next door, and collect the premium.

Downing does not deny that McKean merely represented him in the delivery of the policy and the collection of the money; the payment to McKean was, in its legal effect, a payment to Downing.

Taking, then, the provision in the policy as it stands, that payment shall be made only to the secretary or to an agent duly appointed as such in writing, it is clear no act of the insured, or no act of one assuming to be an agent, and who is really not an agent of the company for the collection of the premium, will protect the assured against the failure of the

money to reach the company. But if the company itself, either expressly or by acts which warrant the implication, has in fact appointed an agent to deliver a policy and collect the premium, the receipt of the money by such agent is the receipt by the company. To hold otherwise, would be a fraud upon the policy holder. He runs the risk of the honesty of his own agents, who apply to the company for insurance upon his property, and the risk of the authority to collect in the man to whom he pays, but he does not guarantee the company that its own agents, sent by it to deliver his policy and receive his money, will pay it over to them. The intention in inserting this provision, doubtless, was to protect the company against default on the part of those who were mere solicitors of insurance for the insured, but it was not intended to make the insured answerable for the default of the company's own agents ; nor will any perversion of the manifest purpose of the stipulation be permitted to work such a result.

The court properly submitted the evidence to the jury to find whether McKean was the mere messenger or servant of Downing, and the payment to him, a payment really to Downing ; then, further, from the evidence that Downing had for years at times acted for the company, it issuing policies at his request, he collecting the premiums for twenty per cent commission, and paying the net balance to the company, whether the company had, without writing, in fact appointed him its agent to deliver this policy and receive the premium ; if so, the payment to Downing was a payment to the company, and the policy could not be avoided merely because the money had not been physically lodged in the company's treasury.

The cases cited by appellant as holding a different rule are without doubt the law, but they are clearly distinguishable on their facts from the one before us. In Pottsville Mutual Fire Ins. Co. v. Minnequa Springs Imp. Co., 100 Pa. 137, there were three different brokers between Haeseler, the agent of the company, and the insured ; the policy was delivered to the insured, who paid the premium, but the money was remitted no further than the second broker ; there was no pretence that it had reached the agent of the company authorized to deliver the policy and collect the premium. Our brother GREEN puts the decision expressly on the ground that the insured had paid the

premium to a broker he knew was not the agent of the company, and therefore took the risk. If, in that case, Haeseler, the agent of the company, had sent an errand boy with the policy to the assured to deliver it and bring back the premium, the policy would have been enforced even though the errand boy had lost the money or embezzled it. So in the other cases cited, there was no actual payment of the premium to an agent authorized by the company to receive it. Here the jury has found, on competent evidence, there was such payment to such agent.

While this case is clearly distinguishable in its facts from those cited, and for this reason is not ruled by the principles announced in them, yet if the results contended for here by appellant necessarily follow from the construction placed upon such stipulations, then must follow some qualification of the rule laid down in them. Otherwise the rulings in Marland v. Royal Ins. Co., 71 Pa. 393, followed by Greene v. Lycoming Ins. Co., 91 Pa. 387, and Pottsville Ins. Co. v. Minnequa Springs Imp. Co., 100 Pa. 137, may not seldom lead to injustice. The law in those cases may be invoked by dishonest insurance companies to escape payment of what ought to be held a clear legal obligation; and attempts will be made under them to pervert the clause referred to into a mere trap for unwary but honest insurers. Take the case in hand: The owner of property on the 27th of January receives a policy dated the 13th of same month, regularly attested, issued by the company, insuring property to the value of $1,300 against fire, for one year from its date; he pays the premium to the person handing him the policy, assuming, as a business man naturally would, that the company having intrusted the executed policy for delivery to the man who offers it to him, the same man has authority to receive the money; then, resting on the security inspired by the possession of the company's executed contract, and his payment of the consideration demanded, he makes no further inquiry; seven weeks after the date of the policy, when nearly one seventh of the term covered by the insurance has expired, his property is destroyed, and he is met by a refusal to pay on the ground that the premium paid had not reached the company's treasury. All this time, he has had possession of the policy with no notice from the company that the premium

had not been handed over; yet during the same time the risk must have been carried on the books of the company as a valid outstanding risk; that is, if the company kept any books showing the condition of its business and the extent of its liabilities. We assume, the policy was not canceled for nonpayment of the premium, for no notice of default was given the assured, and the secretary of the company, who was familiar with the books, and who testified at length, does not say that it was canceled.

Under such a state of facts, and applying to them the law invoked in the cases cited, unless the policy holder, as in this case, can further adduce evidence that he to whom he paid his money was in fact authorized to receive it, he is insured if there be no fire, but not insured if one occur. For if, without notice to him of the non-receipt of the premium on an executed and delivered policy, the company can declare it void, when a fire occurs seven weeks after it has been paid for, it can do the same seven months after; in effect, the policy holders, under such a clause, become insurers of the honesty and promptitude of those to whom the insurance company, without a written appointment, intrusts its policies for delivery. It ought to be held that, under such a clause, the insurers themselves waive it, whenever, by their voluntary act, the policy leaves the office to be delivered to the insured on payment of the premium; and this, without regard to the fact that some one, having no nominal connection with the company as agent, hands over the policy and receives the premium. By the very fact of issuing a policy which requires, apparently, nothing but delivery and payment of premium to put it in force, the company arms every man into whose hands it may come with the power to receive its money; there could be no conduct more significant of an intention to waive the advantage of such a clause than this. But, without regard to the soundness of this individual opinion of what the law ought to be, the case before us, on its facts, being clearly outside the principles laid down in the cases cited, the judgment is affirmed, and appeal dismissed.