## Clymer Opera Company to use, Appellant, *v.* Rural Valley Mutual Fire Insurance Company.

*Insurance — Fire insurance — Sole ownership — Building on leased ground—Insurance broker—Waiver.*

1. Where a policy of fire insurance for $1,000 specifies that $800 thereof is on a "one story composition roof, frame building," and $200 on the contents thereof consisting of fixtures of an amusement hall, and it appears that at the time the insurance was taken out, the insured while owning the building and contents, only leased the ground, the policy is void under a provision contained therein that it "shall be void if the interest of the insured be other than unconditional, and sole ownership; or if the subject of insurance be a building on ground not owned by the insured in fee simple."

In such a case if the insurance has been placed by a person whose only relation with the insurance company is that of an insurance broker without any authority as an agent to write insurance and issue a policy

646 CLYMER CO., Appellant, *v.* R. V. M. FIRE INS. CO.

for the company, the knowledge of such person of the actual condition of the title, is not the knowledge of the company so as to estop the company from asserting a forfeiture of the policy for breach of a covenant as to "sole ownership."

3. Where a policy of fire insurance is for a sum in gross, but apportioned between a building and the contents thereof, and it appears that there is a breach of the covenant as to the "sole ownership" of the building, the policy is void, not only as to the building, but also as to the personal property.

Argued May 7, 1912.   Appeal, No. 152, April T., 1912, by plaintiff, from judgment of C. P. Indiana Co., June T., 1910, No. 360, for defendant non obstante veredicto in case of Clymer Opera Company to use of Savings & Trust Company of Indiana v. The Rural Valley Mutual Fire Insurance Company.   Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD and PORTER, JJ.   Affirmed.

Assumpsit on a policy of fire insurance.   Before TELFORD, P. J.

The facts are stated in the opinion of the Superior Court.

At the trial the jury returned a verdict for plaintiff for $1,078.82.

*Error assigned* was in entering judgment for defendant non obstante veredicto.

*Ernest Stewart*, with him *Samuel Cunningham*, for appellant.—McClain was the agent of the insurance company: Eilenberger v. Fire Ins. Co., 89 Pa. 464; Sias v. Ins. Co., 8 Fed. Repr. 183; Mohr v. Ins. Co., 13 Fed. Repr. 74.

*D. B. Taylor*, with him *William E. Schaak*, for appellee.

OPINION BY PORTER, J., July 18, 1912:

The plaintiff brought this action upon a policy issued by the defendant company, insuring plaintiff against loss

by fire, to an amount not exceeding $1,000, "on the following described property while located and contained as described herein, and not elsewhere." The paper, referred to in the testimony as "the form," attached to the policy and made part thereof, described the property insured and apportioned the total insurance to the several items, viz.: $800 on a one-story composition roof, frame building, occupied as an amusement hall and livery stable; and $200 "on the contents consisting principally of scenery, chairs, desks . . . . and other fixtures usually used in an amusement hall. All while contained in above described building." The policy contained, inter alia, the following covenant: "This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void if . . . . the interest of the insured be other than unconditional and sole ownership; or if the subject of insurance be a building on ground not owned by the insured in fee simple." The defendant, at the trial, submitted a point requesting binding instructions, which the court refused. There was a verdict in favor of the plaintiff, but the court, on motion duly made, entered judgment in favor of the defendant non obstante veredicto, and the plaintiff appeals.

The evidence produced by the plaintiff revealed, and it is an admitted fact, that the interest of the insured in the building was not that of unconditional and sole ownership and that the buildings stood upon ground not owned by the insured in fee simple. The insured held the ground under a lease for a term of ten years, and the owner of the fee, named Neely, had under the lease the right to occupy a part of the building, during the entire term. These facts, by the very terms of the contract, relieved the insurer from all liability. Unexplained they constituted an absolute defense on the merits, and the burden of explanation was upon the plaintiff: Welsh v. London Assurance Corporation, 151 Pa. 607; Bateman v. Lumbermen's Insurance Co., 189 Pa. 465; Moore v. Fire Insurance Co., 196 Pa. 30. The appellant contends that it discharged

this burden by producing evidence sufficient to warrant a finding that the defendant company knew, at the time the policy issued, all the facts with regard to the character of the title under which the assured held the property. When a policy is issued without a written application, and the company knows at the time that one of the conditions thereof is inconsistent with the facts, and that the insured has been guilty of no fraud, the company is estopped from setting up the breach of said condition: Caldwell v. Fire Association, 177 Pa. 492. The question in the present case is not whether the facts with regard to this title were known to one person or forty persons: but is, was there sufficient evidence to warrant a finding that they were known to some person whose knowledge must be held to be the knowledge of this defendant company. The plaintiffs relied upon evidence which, if believed, established that they had effected the insurance upon their property through one C. C. McLain. McLain was a member of the firm of Timberlake & McLain, doing business as insurance brokers and agents, under the style of "Indiana Insuring Agency." Some time in October, 1909, McLain visited one of the members of the plaintiff company, named Clemsen, and entered into negotiations with him with regard to insuring this building and its contents. It was at this time that, according to the testimony, McLain was informed of the nature of the title to the property. They agreed upon the amount of the insurance to be effected, but there is no evidence which would warrant a finding that they then agreed or that anything was said about the companies by which the policies were to be written. McLain, according to Clemsen's testimony, subsequently called at the house of the latter and told him "everything will be all right. He was placing the insurance all right." Clemsen directed McLain to deliver the policies to the Savings & Trust Co. of Indiana, the mortgagee. McLain distributed the amount of the insurance agreed upon among five companies which he was authorized to represent as agent,

namely, the Northern, Birmingham, India Mutual of Boston, Flood City Mutual, and the Safety Mutual Fire Insurance Co., of Lebanon, Pa.  He was authorized to write insurance and issue policies for those companies, and policies were written by him for said companies, respectively, and delivered to the Savings & Trust Co. of Indiana, the mortgagee, with the usual mortgage clause attached.  Some of said policies were dated October 23, 1909, and the others on the 28th day of the same month.  McLain, on November 11, 1909, sent to Clemsen a letter, stating the manner in which the insurance had been distributed, giving the names of the companies above enumerated, the number of the policy issued by each company and the amount of the premiums, and stating that the policies had been delivered to the mortgagee.  The total amount of the premiums was $180, which amount plaintiff paid to McLain.  The name of the Rural Valley Mutual Fire Insurance Company, this defendant, had never been mentioned in these negotiations, there is not a scintilla of evidence tending to establish that Clemsen could have thought he was dealing with an agent of that company, nor is there any evidence even remotely indicating that that company or any person authorized to represent it had notice or knowledge of the negotiations which had resulted in the writing of policies by McLain as the agent of five other companies.

Some time after November 11, 1909, the Northern Insurance Company, one of those for which McLain had written a policy, declined to accept the risk, and the policy of that company was canceled.  This reduced the amount of the insurance in force to $4,000, but McLain had in his hands the money of the plaintiff to pay premiums upon a total insurance of $5,000.  McLain subsequently sent a written application to the home office of the defendant company, located at Rural Valley, Pa., for a policy upon this property in the amount of $1,000.  That application was passed upon at the home office of the company and accepted, and on December 14,

1909, the policy upon which this action is founded was executed by the officers of the company and sent to McLain, who thereupon remitted to the company the amount of the premium. McLain did not, so far as disclosed by the testimony, inform the plaintiffs that the policy of the Northern Insurance Co. had been canceled or that he had made application for a policy to the defendant company. There was no testimony which would have warranted a finding that the defendant company or any of its agents knew that the Northern Insurance Co. had either issued or canceled a policy, or that the company had notice or knowledge of the prior negotiations between the plaintiffs and the other insurance companies. There was not in this case any effort to establish that McLain had even represented himself to be an agent of the defendant company. The policy in suit does not indicate that McLain, or the firm of which he was a member were agents of the defendant company or had anything to do with writing the policy. There was no evidence tending to establish that the defendant company had ever authorized Timberlake & McLain to write policies, or make any contract, or to solicit insurance for the defendant company. Both Timberlake and McLain testified that they never had been authorized to make or solicit contracts of insurance for this company.

The plaintiffs in support of their contention that Timberlake & McLain were the agents and representatives of the defendant company, in the sense that their knowledge must be held to be imputed to the company, relied entirely upon the testimony of Timberlake and McLain, respectively. That testimony which was uncontradicted on this point, shows that the only relation which ever had existed between Timberlake & McLain and the defendant company was such as involved no departure from the ordinary practice between an insurance company and a broker who effects insurance as the agent of a party who employs him for that purpose. The only business which these brokers had ever done with the defendant company

was precisely of the same character as that involved in the present case. Upon two or three former occasions Timberlake & McLain had had applications for insurance which, for some reason, they could not write for any company for which they had the power, as agents, to write insurance. They thereupon prepared the "forms," describing the property and the character of the risk, and sent these with an application for insurance to the home office of the defendant company, where the risk was passed upon by the company and, if accepted, a policy was fully executed by the company at its home office and sent to Timberlake & McLain, who were authorized to deliver it, collect the premium and remit to the company. The authority to execute a contract of insurance is entirely distinct from that of an agent merely authorized to receive payment of the premium, after the company has passed on the risk and placed the policy in the hands of the agent for the purpose of delivery: Arthurholt v. Fire Insurance Co., 159 Pa. 1. The present case is strikingly similar to Freedman v. Insurance Co., 182 Pa. 64, in which Mr. Justice MITCHELL said: "His own testimony which is uncontradicted on this point, shows that Sturdevant was an insurance broker, having no special relation to the defendant company but occasionally taking out policies in it, through its regular agent, for his customers when he could not or did not wish to place their risks in the other companies which he personally represented. He was not at the time he procured this insurance, and had never been, an agent for the defendant, nor was he acting on this occasion on behalf or at the suggestion of the regular agent. On the contrary, in soliciting this insurance he was pursuing his own business as a broker, and, as he says, using his own judgment where to place the insurance his customers authorized him to procure for them." The burden was upon the plaintiffs in this case in order to estop the defendant to assert the clause of the policy in question, to establish by evidence that some person authorized to represent the defendant company in making

the contract of insurance had knowledge of the facts with regard to the title. The evidence wholly failed to establish that McLain was authorized to make any contract of insurance on behalf of this defendant.

The consideration for the policy, the premium paid, was entire and indivisible; the amount of the risk is stated in gross, although the amount of the liability upon each of the subjects of the contract is limited. The contract was entire and not separable, and being void as to the building, at the time it was issued, it was also invalid as to the personal property, which was burned with the building, and the plaintiff was not entitled to recover: Schiavoni v. Dubuque F. & M. Insurance Co., 48 Pa. Superior Ct. 252. The specifications of error are overruled.

The judgment is affirmed.