[No. 25611. Department Two. September 5, 1935.]

GEORGE CONNIFF, *Respondent*, v. DETROIT FIRE AND
MARINE INSURANCE COMPANY, *Appellant*.[1]

*Geo. D. Lantz,* for appellant.

*Edmund T. Brigham,* for respondent.

MITCHELL, J.—This is an action by George Conniff
to recover on a fire insurance policy in the sum of
one thousand dollars issued by the Detroit Fire and
Marine Insurance Company of Detroit, Michigan, a
corporation. At the date of the policy, one O. F. Mel-
der held a mortgage on the property, and, by inad-
vertence, a mortgage clause, making loss, if any, pay-
able to the mortgagee, as his interests shall appear,
was not attached to the policy. The action asked for
reformation of the policy in that respect, and that the
judgment should run, first, in favor of the mortgagee,

[1]Reported in 48 P. (2d) 946.

and the balance in favor of the plaintiff. Upon trial without a jury, findings, conclusions and judgment were entered in favor of the plaintiff as prayed for in his complaint. The insurance company has appealed.

Preliminarily, it may be said that the formal objection on the part of appellant in his assignments to the reformation of the policy so as to include the mortgage clause, is without substantial merit. . The finding and judgment in that respect are supported without any reasonable question by the evidence, and the result in no way causes harm or prejudice to the appellant.

Upon the main controversy, the right to recover on the policy, the facts found by the trial court, which are sustained by a clear preponderance of the evidence, although in some respects there was a conflict in the evidence, are substantially as follows:

Respondent and his wife are residents of Idaho and own a dwelling house near Newport, Washington. At the instance of one G. A. Ling, of Idaho, who was engaged generally in the business of soliciting insurance, respondent gave him an application for one thousand dollars fire insurance on the building, agreeing to pay the regular premium for the insurance. Ling sent the application to the Eugene H. Ware Company (hereinafter called the Ware company), of Coeur d'Alene, Idaho, and the latter, in turn, transmitted it to the Washington General Agency, Inc. (hereinafter called the general agency), of Seattle. Neither Ling nor the Ware company was licensed as agent or broker of the insurance company. The general agency was a duly appointed and licensed agent of appellant under the laws of this state.

Upon receipt of the application, the appellant, through its general agency, executed the policy for a term of three years from August 6, 1932, covering the

dwelling house. The general agency delivered the policy unconditionally to the Ware company, charging it with the full premium of $28 and charging itself, as agent, on its own account with the appellant, with the same premium. The Ware company delivered the policy unconditionally to Ling, charging him with the full premium of $28. On September 6, 1932, Ling, according to directions given him by the Ware company, delivered the policy to the respondent and received from him the full premium of $28, giving his receipt therefor.

Respondent and Ling were personally unknown to the appellant and its general agency at Seattle. The Ware company was well known to appellant's general agency, having previously transacted considerable insurance business of different kinds with it. Ling was well known to the Ware company, having previously transacted considerable insurance business with it. Respondent was unknown to the Ware company.

Ling was entitled to retain 15% of the premium, the Ware company was entitled to receive 10% of the premium, and the general agency was entitled to receive 12½% of it. Ling appropriated the whole premium to his own use, and no portion of it was ever received by any of the other parties.

On October 20, 1932, appellant, through its general agency, mailed notice of cancellation of the policy direct to the respondent for nonpayment of the premium, which notice was received by respondent at his home in Idaho. The appellant has not returned, nor offered to return, to the respondent the unearned premium or any portion of it.

Upon receipt of the notice of cancellation of the policy, Mrs. Conniff, for her husband and herself, wrote direct to appellant at its home office or to its general agency in Seattle, stating that there must be

some mistake, as the premium had been paid on the policy, for which a receipt was held by them; to which letter, it seems, no reply was had by the Conniffs or either of them.

Afterwards, November 5, 1933, the dwelling house was destroyed by fire. Notice of the loss was duly given to and received by the appellant.

It may be further stated that appellant's own proof shows that the application for the insurance was received by appellant's general agency in Seattle, incomplete in important particulars, from the Ware company, and was completed by appellant's general agency.

The trial court further found, somewhat in the nature of conclusions:

"That defendant Detroit Fire and Marine Insurance Company of Detroit, Michigan, a corporation, through its regularly constituted agent, the Washington General Agency, Inc. by unconditionally delivering the policy to the Eugene H. Ware Company who in turn likewise delivered it unconditionally to said G. A. Ling and who finally delivered same to the plaintiff, said defendant clothed said G. A. Ling with apparent authority to accept and receipt for the premium therein on said defendant's behalf and payment by plaintiff to said Ling was payment to said defendant; since said defendant failed to refund the unearned portion of the premium at the time of giving plaintiff notice of cancellation, the policy was in effect at the time of the loss; that said defendant's acceptance of the application that came through said G. A. Ling and said Eugene H. Ware Co. and its execution of and delivery to plaintiff of its valid policy through the same channels constituted ratification of their assumed agency for the said defendant."

The assignment of error mainly relied on is that Ling was a broker and, as such, the agent of the respondent, and that appellant was not responsible for

any act of Ling, including Ling's failure to turn over the premium to appellant or its agent.

Appellant stresses the idea that Ling was not its statutory or licensed agent. It may be admitted that he was not. The important question, however, is: Was he acting as agent in fact for the appellant in delivering the policy to, and collecting the premium from, the respondent, or, more correctly, did he in fact bind the appellant in so doing?

Both the application and the policy show the residence of the respondent to be Sandpoint, Idaho. In delivering the policy, the appellant sent it through the same party by which the business was received, in which course it continued until the policy was delivered and the premium collected. The circumstances, consisting in part of considerable insurance business of different kinds received from the Ware company by the general agency of the appellant, make it certain that, in sending the policy to the Ware company, which was to receive 10% of the premium, the appellant intended to clothe that company with the authority of an agent to collect upon the delivery of the policy to the assured. Suppose the Ware company, as such agent,

". . . had sent an errand boy with the policy to the assured to deliver it and bring back the premium, the policy would have been enforced, even though the errand boy had lost the money or embezzled it." *Arthurholt v. Susequehanna Mutual Fire Insurance Co.*, 159 Pa. 1, 28 Atl. 197, 39 Am. St. 659.

Certainly, the rule will apply here, where the policy was turned over by the Ware company to a business man who was to get a part of the commission or premium on the transaction.

The *Arthurholt* case, just cited, was similar to and the reasoning in it applicable here. The holding was

in favor of the assured. In substance, the case was as follows:

"Arthurholt, the plaintiff, was a retail merchant in Clarksville, Mercer county. He owned the building containing his stock of goods. In January, 1892, he applied to McKean, an insurance agent in Mercer, Pa., for insurance on the building and goods; McKean could not place the risk in any of the companies he was agent for, so he applied to Downing, an insurance broker in Philadelphia, to get the insurance. Downing applied, by letter, to the Susquehanna Mutual Insurance Company, (this defendant), having its office at Harrisburg, to take a risk of $1,000 on the goods, and $300 on the building. The defendant, in response, on the 13th of January, 1892, made out the policy, and transmitted it by mail to Downing, at Philadelphia, who immediately sent it by mail to McKean, at Mercer, who, by mail, delivered it, on January 27th, to Arthurholt, the plaintiff, at Clarksville. The next day, Arthurholt forwarded, by check, the premium, $19.50, to McKean, who duly received it, and drew the money from the bank, but he did not pay it over to either Downing or the insurance company. On the 3d of March, 1892, both goods and building were destroyed by fire. The defendant refused to pay any part of the loss, because (1) the premium was not actually paid to the company, as required by the terms of the policy; . . . It will be noticed that the premium money was paid to McKean, who was neither the secretary nor an agent of the company duly appointed by writing. He had no official connection whatever with the company. But the company's formally attested policy came into his hands for delivery to the insured. Why? Because it was sent to him by Downing for that purpose. He was then the mere representative of Downing,—the vehicle chosen by him for the transmission of the policy, and the reception and remittance of the premium. . . . Downing's agency was not by a formal, written appointment; defendant denies that he was its agent at all. He testified he had been an insurance broker, with an office in Philadelphia, for 15 years; that he had placed a number of risks with defendant

company before he applied for this policy; always collected the premiums, and remitted them, less his commissions, to the company; that, on his application, the company sent him this policy, and he sent it to McKean to deliver to the insured, and collect and remit the premium to him. For negotiating and placing these risks, the company allowed him (Downing) a commission of 20 per cent. of the premium, he remitting to the company 80 per cent. He did not deny his liability to the company for the premium. If the company delivered this policy to Downing on the understanding that he was to deliver it to the insured, collect the premium, retain his percentage, and remit the balance to the company, certainly, whatever may have been his attitude before that time, while negotiation was pending, he was the agent in fact of the company for the delivery of the policy and the collection of the premium; as fully the agent of the company as if the secretary had handed him the policy in the company's office, with instructions to deliver it to the insured next door, and collect the premium. . . . If the company itself, either expressly or by acts which warrant the implication, has in fact appointed an agent to deliver a policy and collect the premium, the receipt of the money by such agent is the receipt by the company.''

The supreme court of California, in *Frasch v. London & Lancashire Fire Ins. Co.,* 213 Cal. 219, 2 P. (2d) 147, cites the *Arthurholt* case and approves its holding, saying, in effect, of that case

''. . . that 'by the very fact of issuing a policy which requires, apparently, nothing but delivery and payment of premium to put it in force, the company arms every man, into whose hands it may come, with the power to receive its money.' ''

See, also, *American Fire Ins. Co. v. Brooks,* 83 Md. 22, 34 Atl. 373; *Transcontinental Oil Co. v. Atlas Assurance Co.,* 278 Pa. 558, 123 Atl. 497; 26 C. J., Fire Insurance, § 59, p. 62.

Other authorities cited by respective counsel need not be discussed, in our opinion. The reasoning or principle of the cases already cited herein is justified and adopted as sustaining the judgment.

Affirmed.

STEINERT, HOLCOMB, and BLAKE, JJ., concur.