[No. 3207-8-III.   Division Three.   June 19, 1980.]

AMIE PATNODE, *Respondent,* v. EDWARD N. GETOOR & ASSOCIATES, INC., ET AL, *Appellants.*

*Lawrence Small* and *Paine, Lowe, Coffin, Herman & O'Kelly,* for appellants.

*Ted Roy* and *Hovis, Cockrill & Roy,* for respondent.

GREEN, C.J.—The plaintiff, Amie Patnode, recovered a judgment for unpaid medical claims in the sum of $15,395.20 against the defendants, Getoor & Associates and Edward N. Getoor and his wife, for breach of fiduciary duties which the defendants owed him as administrators of a group medical insurance policy. Defendants appeal.

Two questions are presented: (1) Was there a breach of fiduciary duties? and if so, (2) Was Mr. Patnode entitled to attorney fees? We affirm, but remand for redetermination of the amount of the judgment.

The unchallenged findings of fact show that Amie Patnode was a member of the Washington Cattlemen's Association (WCA). As a member, he first obtained medical

coverage under a group policy issued by Nationwide Insurance Company. In March 1975, Nationwide notified WCA of its intent to discontinue the group policy. At that time, Thomas Whitaker, an insurance agent, obtained coverage through the defendants who were regional administrators of Security Multiple Employees Trust (SMET). This trust was organized as an employee benefit plan under the provisions of the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 *et seq.* (1975) (ERISA). The program was reinsured by Old Republic Life Insurance Company.

In March 1976, Old Republic Life gave notice of cancellation of its underwriting of SMET. The trial court found that the defendants, after extensive investigation into its financial ability, placed the coverage of the WCA members with National Multiple Employers Foundation (NMEF), a self–funded trust. In its oral opinion, the court stated, with respect to the placement of coverage with NMEF, that "[Getoor] . . . acted as a prudent man . . . followed through on a reasonable examination to determine stability and is not to be faulted for any failure in this regard." Coverage was effective April 1, 1976. Defendants, administrators for this coverage, collected all contributions or premiums and were to pay all claims. It deducted an administrator's fee of 25 percent from the premiums collected and remitted the balance to the trust.

Thereafter, Mr. Patnode paid his premiums to defendants. In the latter part of December 1976, medical coverage for WCA members, including the Patnodes, was terminated effective December 1, 1976, by defendants' written notice to NMEF and by its nonpayment of premiums due on that date. At that time, defendants had collected the premiums, but instead of paying the premiums to NMEF they placed coverage with National Health Benefit Plan (NHBP), another self–funded employee benefit plan formed under ERISA, and paid the collected premiums to it. Defendants became the regional administrator for this plan and continued collecting premiums. They failed to notify WCA or Mr.

Patnode of this change of coverage until January 1977. At that time the grace period for the NMEF coverage had expired.

The record shows that in the latter part of 1976 defendants became concerned about the financial stability of NMEF. Finally, in late December defendants concluded that NMEF would not survive, and if they paid the premiums that had been received from members like Mr. Patnode to NMEF, the money would fall into the hands of a trustee in bankruptcy and the WCA membership would be without coverage. For that reason, the defendants obtained coverage with NHBP. Defendants' prognosis was correct. NMEF commenced bankruptcy proceedings in California during February 1977. Defendants, after securing a power of attorney from Mr. Patnode, attempted to file a claim in the bankruptcy on his behalf.

Meanwhile, during October 1976, Mrs. Patnode began incurring medical expenses. On and prior to December 1, 1976, the date NMEF coverage was terminated, she was hospitalized in Portland, Oregon, and this hospitalization continued into January 1977. Mrs. Patnode also incurred additional medical expenses in the period following her release from the hospital. After the transfer of coverage to NHBP, defendants continued to bill and collect premiums from Mr. Patnode until March 1978. However, nothing was ever paid on the Patnodes' medical claims.

The trial court concluded that defendants were acting as a fiduciary under ERISA and were liable for all of the unpaid medical expenses of Mrs. Patnode.

■ First, defendants contend they did not breach a fiduciary duty to Mr. Patnode, and therefore, the court erred when it found to the contrary in findings of fact Nos. 10 and 11. The court found in finding of fact No. 10:

That the defendant, Edward N. Getoor, breached his responsibilities to the plaintiff as an Administrator of N.M.E.F., in not making the required contributions beyond December 1, 1976, although he was holding plaintiff's six months advance premiums. That as a result

of such non–payment, the Bankruptcy Court can legally deny plaintiff any coverage for current hospital expense through N.M.E.F. beyond December 1, 1976, since Mrs. Patnode was hospitalized at that time.

This finding is supported by substantial evidence. Defendants for the first time on appeal contend that they were agents of NMEF for the collection of premiums and since they did collect the premiums from Mr. Patnode, NMEF coverage continued after termination by defendants. In other words, receipt of premiums by the agent is receipt by the principal. They rely on *Conniff v. Detroit Fire & Marine Ins. Co.,* 183 Wash. 496, 48 P.2d 946 (1935); *Snavely v. London Assurance Corp.,* 128 Wash. 47, 221 P. 611 (1924); 6 R. Anderson, *Couch Cyclopedia of Insurance Law* § 31.125 (2d ed. 1961). Consequently, defendants argue NMEF is liable for Patnode's claim for medical expenses for the period covered by the premium. As a result, defendant should not be held liable for those expenses; rather, the Patnode claim should be recognized in the bankruptcy.

On the other hand, Mr. Patnode correctly points out that an appellate court will not review an issue upon a theory not presented to the trial court. Additionally, he contends defendants owed him a fiduciary duty to notify him and WCA of the situation before deciding to terminate NMEF so that alternate coverage could be provided for Mrs. Patnode's current hospitalization. NHBP coverage did not commence for a defined period if the insured was hospitalized at the time the policy was issued. We need not reach these arguments.

The trial court premised its determination upon defendants' nonpayment of the premiums to NMEF on December 1, 1976. Therefore, the bankruptcy court could legally deny the Patnode claim. As a result, the trial court allowed a recovery against defendants. In so doing, it allowed Mr. Patnode to recover more than he may have recovered had defendants paid the premiums to NMEF

and left the Patnodes to their remedy in the bankruptcy court. This was error.

During oral argument on appeal, defense counsel informed the court that while their appeal was pending, defendants learned they had not properly filed Patnode's claim in the bankruptcy court. The record shows they undertook to do so under a power of attorney. It was conceded during the argument that the failure to properly file the claim was a breach of fiduciary duty. We were told that prorated distributions had now been made from the bankruptcy. Consequently, and in view of our holding, those portions of the medical expense claims for which NMEF would have been liable prior to the time coverage by NHBP would have been effective for Mrs. Patnode are remanded for redetermination. Mr. Patnode's recovery should be limited to the amount he would have recovered had the claim been allowed in the bankruptcy.

In finding of fact No. 11, the court found:

That the defendant, Edward N. Getoor, breached his responsibilities as a fiduciary to the plaintiff as an Administrator of N.H.B.P., by continuing to collect premiums and failing to advise the plaintiff that there were inadequate monies in N.H.B.P. to pay his claims.

This finding is also supported by substantial evidence and will not be disturbed. The evidence shows that defendants were engaged in the formation of NHBP in October 1976 and never discussed its financial situation or the fact that they were involved in the formation of that trust with WCA or Mr. Patnode. Actually, dependants terminated NMEF and paid the premium to NHBP before Mr. Patnode or WCA were even notified of the change. It is evident that

defendants assumed duties beyond the mere collection of premiums and payment of claims. They made the change and continued to collect premiums even though they knew there were insufficient funds to pay claims. They undertook to act, and did act, as a fiduciary for the Patnodes. Their acts breached the standard of care, skill and judgment which the law imposes on one who assumes the role of a fiduciary. *Meerdink v. Krieger,* 15 Wn. App. 540, 550 P.2d 42 (1976); 29 U.S.C. §§ 1002(21), 1104 (1975). The fact that Mr. Patnode signed an application for NHBP coverage after the transfer had been made does not remove the breach. It is evident that Mr. Patnode placed his trust and confidence in defendants. Consequently, he should recover from defendants the full amount of the medical claims for which NHBP would be liable. The trial court's finding and conclusion in this respect must be upheld.

Finally, we reach the question of whether Mr. Patnode is entitled to recover attorney's fees. Since the parties' relationship is governed by ERISA, we look to that act for the answer. It provides in 29 U.S.C. § 1132(g) (1975):

> In any action under this subchapter by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party.

Defendants do not claim that the trial court abused its discretion in awarding the fees; they simply argue that no award is appropriate. Since we have determined that substantial evidence exists to support the trial court's finding that defendants breached their fiduciary duties, the award of attorney's fees must be confirmed. On remand, the trial court may in its discretion determine whether additional fees should be awarded for the appeal.

Affirmed in part; reversed in part, and remanded for further proceedings in accordance with this opinion.

McINTURFF, A.C.J., and MUNSON, J., concur.

Reconsideration denied August 7, 1980.

Review denied by Supreme Court October 10, 1980.